**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

<table>
<tr><td>

**DONALD J. TRUMP FOR PRESIDENT, INC.,**

                **Plaintiff,**

    **vs.**

**NORTHLAND TELEVISION, LLC d/b/a WJFW-NBC,**

                **Defendant.**

</td><td>

**Civil No.: 3:20-cv-00385-wmc**

</td></tr>
</table>

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT WITH PREJUDICE</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 2

    A.    The Advertisement ................................................................. 2

    B.    President Trump's February 28 Campaign Rally and the Controversy Over His Coronavirus "Hoax" Remark .................................. 4

    C.    This Lawsuit ........................................................................... 7

LEGAL STANDARD ................................................................................... 7

ARGUMENT ................................................................................................. 9

I.    THE ADVERTISEMENT IS NOT "OF AND CONCERNING" THE TRUMP CAMPAIGN COMMITTEE AND THEREFORE NOT DEFAMATORY OF IT ................................................................ 10

    A.    The political advertisement, as a matter of law, is not about the Trump Campaign Committee ............................................ 11

    B.    The political advertisement, as a matter of law, is not defamatory of the Committee ...................................................................... 13

II.    THE ADVERTISEMENT IS NOT AN ACTIONABLE DEFAMATION AS IT REFLECTS AN OPINION INCAPABLE OF BEING PROVEN TRUE OR FALSE, NOT A FACT ............................................................. 14

    A.    The Court must consider the entire political advertisement ................ 15

    B.    The political advertisement expresses a constitutionally protected opinion. ............................................................................... 16

III.    THE ADVERTISEMENT'S PORTRAYAL OF THE PRESIDENT'S STATEMENT "THIS IS THEIR NEW HOAX" IS SUBSTANTIALLY TRUE ..................................................................................... 20

IV.    THE TRUMP CAMPAIGN COMMITTEE HAS NOT PLAUSIBLY ALLEGED ACTUAL MALICE ................................................... 23

CONCLUSION ............................................................................................. 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*281 Care Committee v. Arneson*,
   766 F.3d 774 (8th Cir. 2014) ................................................19

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)...............................16

*Alamo v. Bliss*,
   864 F.3d 541 (7th Cir. 2017) ..............................................8

*Arnold v. Ingram*,
   138 N.W. 111 (Wis. 1913)..................................................10

*Arpaio v. Cottle*,
   404 F. Supp. 3d 80 (D.D.C. 2019) ................................6, 25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................7, 8

*Bardney v. United States*,
   1998 U.S. App. LEXIS 13036 (7th Cir. June 16, 1998) .........6

*Bay View Packing Co. v. Taff*,
   543 N.W.2d 522 (Wis. Ct. App. 1995) ...............................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................7

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015)..............................................24

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984)..........................................................26

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ..............................................4

*Cohn v. National Broadcasting Co.*,
   67 A.D.2d 140 (N.Y. App. Div. 1979) .............................12

*In re Copper Market Antitrust Litigation*,
   2003 U.S. Dist. LEXIS 21467 (W.D. Wis. Aug. 19, 2003)......6

*Deripaska v. Associated Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017) ......................................................................22

*Dilworth v. Dudley*,
   75 F.3d 307 (7th Cir. 1996) ....................................................................14, 15, 18

*Dodds v. American Broadcasting Co.*,
   145 F.3d 1053 (9th Cir. 1998) .............................................................................18

*Eyal v. Helen Broadcasting Corp.*,
   583 N.E.2d 228 (Mass. 1991) ..............................................................................13

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ....................................................................6, 25

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ...............................................................................6

*Garross v. Medtronic, Inc.*,
   77 F. Supp. 3d 809 (E.D. Wis. 2015)......................................................................3

*GE Capital Corp. v. Lease Resolution Corp.*,
   128 F.3d 1074 (7th Cir. 1997) ...............................................................................3

*Giwosky v. Journal Co.*,
   237 N.W.2d 36 (Wis. 1976)............................................................................10, 11

*Greenbelt Cooperative Publishing Association v. Bresler*,
   398 U.S. 6 (1970)..................................................................................................16

*Grzelak v. Calumet Publishing Co.*,
   543 F.2d 579 (7th Cir. 1975) ...............................................................................23

*Harp v. Glock*,
   2019 U.S. Dist. LEXIS 71149 (E.D. Wis. Apr. 25, 2019)......................................12

*Harris v. Quadracci*,
   48 F.3d 247 (7th Cir. 1995) .................................................................................23

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989)..............................................................................................25

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222 (7th Cir. 1993) .................................................................................14

*Jacobus v. Trump*,
   55 Misc. 3d 470 (N.Y. Sup. Ct. 2017) .................................................................15

*Jankovic v. International Crisis Group*,
494 F.3d 1080 (D.C. Cir. 2007) ...................................................................................12

*Jankovic v. International Crisis Group*,
822 F.3d 576 (D.C. Cir. 2016) .....................................................................................25

*John v. Journal Communications, Inc.*,
801 F. Supp. 210 (E.D. Wis. 1992)........................................................................20, 21

*Kaminske v. Wisconsin Central Ltd.*,
102 F. Supp. 2d 1066 (E.D. Wis. 2000)..................................................................14, 16

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)..............................................................................10, 11, 13

*Laborers' Pension Fund v. Blackmore Sewer Construction, Inc.*,
298 F.3d 600 (7th Cir. 2002) .........................................................................................3

*Lemelson v. Bloomberg L.P.*,
253 F. Supp. 3d 333 (D. Mass. 2017) ...........................................................................25

*Lemelson v. Bloomberg L.P.*,
903 F.3d 19 (1st Cir. 2018).............................................................................................24

*Liberty Mutual Fire Insurance Co. v. O'Keefe*,
556 N.W.2d 133 (Wis. Ct. App. 1996) .........................................................................10

*Marjala v. Fox News Network LLC*,
2017 WI App 7, 2016 Wisc. App. LEXIS 805 .....................................................15, 16, 19

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991)........................................................................................................20

*Mayfield v. NASCAR*,
674 F.3d 369 (4th Cir. 2012) .........................................................................................24

*McDonald v. Wise*,
769 F.3d 1202 (10th Cir. 2014) .....................................................................................24

*McIntyre v. Ohio Elections Commission*,
514 U.S. 334 (1995)........................................................................................................19

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) ................................................................................22, 24

*Molson Coors Bev. Co. USA LLC v. Anheuser-Busch Cos., LLC*,
2020 U.S. App. LEXIS 14019 (7th Cir. May 1, 2020) .........................................................19

*Montgomery v. Risen,*
    197 F. Supp. 3d 219 (D.D.C. 2016) ...................................................18

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ................................................................... *passim*

*Ocala Star-Banner v. Damron,*
    401 U.S. 295 (1971) .....................................................................18

*Ogren v. Employers Reinsurance Corp.,*
    350 N.W.2d 725 (Wis. Ct. App. 1984) ..............................................11

*Pippen v. NBCUniversal Media, LLC,*
    734 F.3d 610 (7th Cir. 2013) ......................................................8, 24

*Quinn v. Overnite Transportation Co.,*
    24 F. App'x 582 (7th Cir. 2001) ..................................................11, 14

*Richards v. Mitcheff,*
    696 F.3d 635 (7th Cir. 2012) ..........................................................7

*Rosenblatt v. Baer,*
    383 U.S. 75 (1966) ......................................................................10

*St. Amant v. Thompson,*
    390 U.S. 727 (1968) .................................................................9, 23

*Starobin v. Northridge Lakes Development Co.,*
    287 N.W.2d 747 (Wis. 1980) .........................................................10

*Storms v. Action Wisconsin Inc.,*
    2008 WI 56, 750 N.W.2d 739 ......................................................9, 26

*Sytkowski v. Mcgee,*
    401 N.W.2d 182 (Wis. Ct. App. 1986) ..............................................11

*Tatur v. Solsrud,*
    498 N.W.2d 232 (Wis. 1993) .....................................................13, 14

*Terry v. Journal Broadcast Corp.,*
    2013 WI App 130, 840 N.W.2d 255 ..........................................15, 22, 23

*Thompson v. National Catholic Reporter Publishing Co.,*
    4 F. Supp. 2d 833 (E.D. Wis. 1998) .................................................10

*Time, Inc. v. Pape,*
    401 U.S. 279 (1971) .................................................................26, 28

*Torgerson v. Journal/Sentinel Inc.*,
    563 N.W.2d 472 (Wis. 1997) ...................................................................................8, 9, 26

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) ..................................................................................25

*West v. Thomson Newspapers*,
    872 P.2d 999 (Utah 1994) ....................................................................................16

*Woods v. Evansville Press Co.*,
    791 F.2d 480 (7th Cir. 1986) ................................................................................22

*Yeager v. National Public Radio*,
    2018 U.S. Dist. LEXIS 127749 (D. Kan. July 31, 2018)......................................18

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) ................................................................................24

## Other Authorities

1 Rodney A. Smolla, *Law of Defamation* § 4:74 (2d ed. 2019 update)........................................12

RESTATEMENT (SECOND) OF TORTS § 561 (1977).........................................................................12

Hon. Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems*
    (5th ed. 2017) ....................................................................................................9, 12, 22

Defendant Northland Television, LLC d/b/a WJFW-NBC ("WJFW") files this Memorandum in support of its Motion to Dismiss with prejudice this action brought by Plaintiff Donald J. Trump for President, Inc. (the "Trump Campaign Committee" or "Committee"). Under Federal Rule of Civil Procedure 12(b)(6), the Complaint fails to state a claim upon which relief may be granted.

## **INTRODUCTION**

With this lawsuit, the Committee for President Trump's re-election campaign seeks to punish a small Wisconsin broadcaster for airing the President's own words about the most alarming public health crisis in a century, the COVID-19 pandemic. This is the fourth defamation lawsuit the Trump Campaign Committee has brought against broadcasters and newspapers in three months,[1] in a clear, concerted effort to chill critical examination of the Administration's policies. The expression under attack here, a paid political advertisement broadcast by a number of television stations around the country just months before a presidential election, lies at the core of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The First Amendment does not tolerate such speech-chilling litigation, and the Court should swiftly dismiss it.

The Complaint asks the Court to ignore both the content and context of this core political speech. The Committee's sole claim—the allegedly false depiction of the President's statement, "this is their new hoax"—targets just five of the President's words in a message that contains 86 of them. The 30-second political advertisement, broadcast by WJFW in Rhinelander, carried the

---

[1] The Committee filed suit against *The New York Times* on February 26, 2020, *The Washington Post* on March 2, and CNN on March 6. *See* Notice of Removal Ex. B, Dkt. 1-3 (Copies of these complaints attached in support of WJFW's Notice of Removal). *See also* note 2 *infra.*

explicit label of Super PAC Priorities USA Action's sponsorship.  It contained an audio montage of the President's own public statements accompanied by the visual image of a graph depicting the sharp rise, from January to March 2020, of the number of Americans who had fallen ill from the coronavirus.  The unmistakable gist of the political advertisement, which concludes with the words "America Needs a Leader They Can Trust," is that while President Trump repeatedly boasted about his "great" response to the crisis, the country grew sicker and sicker.

Under longstanding First Amendment principles and Wisconsin law, Plaintiff fails to state a claim.  As a matter of law, the advertisement did not defame the Trump Campaign Committee because it was about President Trump, not the Committee.  The advertisement is a non-actionable expression of the political opinion that President Trump downplayed the danger of the virus while the public health threat increased exponentially.  The President's statement "this is their new hoax," when properly viewed in both the contexts of the entire advertisement and his Administration's position about the coronavirus outbreak, is not materially false.  Finally, the Complaint does not plausibly allege, as the Constitution requires, that WJFW published the political advertisement with "actual malice," *i.e.*, knowing that it was false or while entertaining serious doubts about its truth.

For each of these independent reasons, the Court should dismiss this action with prejudice.

## FACTUAL BACKGROUND

### A.  The Advertisement

On March 24, 2020, WJFW began airing the political advertisement titled "Exponential Threat," produced by the Super Political Action Committee (PAC) Priorities USA Action

("Priorities USA").  Dkt 1-2 ("Compl.") ¶ 22.  The 30-second message contains a montage of audio clips of President Trump's words, as follows:

> The coronavirus, this is their new hoax.  We have it totally under control.  It's one person coming in from China.  One day, it's like a miracle, it will disappear. When you have 15 people and within a couple of days is going to be down to close to zero.  We really think we've done a great job in keeping it down to a minimum.  I like this stuff, I really get it.  People are surprised that I understand it.  No, I don't take responsibility at all.

The President's "hoax" statement, included in the montage, came from his address to a South Carolina rally, and most of the remaining statements were made at official White House events and briefings.[2]  The text of these words appears on the screen sequentially, along with a visual image of a line graph depicting the exponential rise of coronavirus cases in the United States between January and March.  *See* Priorities USA, *Exponential Threat*, YouTube (Mar. 23, 2020),

---

[2] *See President Trump Campaign Event in North Charleston, South Carolina*, C-SPAN (Feb. 28, 2020), https://cs.pn/3c5rVbI (a transcript of the event is attached as Exhibit A to the concurrently filed Declaration of J. Bradshaw (the "Bradshaw Decl.")); Matthew J. Belvedere, *Trump says he trusts China's Xi on coronavirus and the US has it "totally under control*," CNBC (Jan. 22, 2020), https://cnb.cx/3aHflhl ("We have it totally under control. It's one person coming in from China.") (Bradshaw Decl. Ex. B); *Remarks by President Trump in Meeting with African American Leaders*, The White House (Feb. 27, 2020), https://bit.ly/2VFhsxV ("One day – it's like a miracle – it will disappear.") (Bradshaw Decl. Ex. C); *Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Conference*, The White House (Feb. 26, 2020), https://bit.ly/2S9aIGb ("when you have 15 people, and the 15 within a couple of days is going to be down to close to zero") (Bradshaw Decl. Ex. D); *id.* ("we really think we've done a great job in keeping it down to a minimum"); *Remarks by President Trump After Tour of the Centers for Disease Control and Prevention | Atlanta, GA*, The White House (Mar. 6, 2020), https://bit.ly/2SbRuzU ("I like this stuff.  I really get it.  People are surprised that I understand it.") (Bradshaw Decl. Ex. E).  The contents of public records and official government websites are properly subject to judicial notice, and the Court also can consider them with this Motion to Dismiss.  *See, e.g.*, *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *Garross v. Medtronic, Inc.*, 77 F. Supp. 3d 809, 818 (E.D. Wis. 2015).  The Court may also consider the transcript of the rally attached as Exhibit A to the Bradshaw Declaration.  *See* note 3 *infra* (discussing incorporation-by-reference doctrine).

https://bit.ly/2VGrEGB (cited at Compl. ¶¶ 1, 23, & Exs. A, G) ("Priorities USA Ad").[3]  The

Complaint does not dispute that these are the President's actual words and that the graph

accurately depicts the trajectory of the virus between January and March.

These comments are followed by a brief video clip of the President stating, from the

podium in front of the White House, "No, I don't take responsibility at all."  Priorities USA Ad.

Those words, and then the phrase "America needs a leader we can trust," also appear on screen.

*Id.*  The ad closes with audio of the sponsorship note, "Priorities USA Action is responsible for

the content of this ad" and the onscreen text:

> Priorities USA Action is responsible for the content of this advertising. Paid for
> by Priorities USA Action and not authorized by any candidate or candidate's
> committee. www.prioritiesusaaction.org

*Id.*  The Complaint alleges that WJFW broadcast  the advertisement from March 24

through April 6, 2020, the day before the April 7, 2020 presidential primary election in

Wisconsin.  Compl. ¶¶ 22, 31.  Priorities USA produced this advertisement to air in a

number of states at that time.[4]

**B.  President Trump's February 28 Campaign Rally and the Controversy Over His
Coronavirus "Hoax" Remark**

The Committee complains of a single statement in the entire 30-second advertisement:

"The coronavirus, this is their new hoax."  *E.g.*, Compl. ¶ 61.  President Trump made the "hoax"

---

[3] The Complaint contains a link to the wrong Priorities USA ad, titled "Exponential Threat
Updated," which WJFW did not air.  Compl. ¶ 23.  The allegations in the Complaint all concern
the Priorities USA advertisement "Exponential Threat" which WJFW began airing on March 24,
2020.  Compl. ¶¶ 1, 22-23, Ex. G at 1, 3.  To assist the Court, WJFW files with this motion a
DVD that contains the advertisement "Exponential Threat" as it was broadcast and a certified
transcript.  *See* Bradshaw Decl. Exs. F & G; *Brownmark Films, LLC v. Comedy Partners*, 682
F.3d 687, 690-91 (7th Cir. 2012) (under incorporation-by-reference doctrine, court may consider,
with Rule 12(b)(6) motion, broadcast referenced in complaint and submitted with motion).

[4] *See Priorities USA Launches "Exponential Threat" Ads in Spanish, Running Digitally in
Florida*, Priorities USA (Mar. 27, 2020), https://bit.ly/3c6VLN1.

comment at a campaign rally in Charleston, South Carolina, on February 28, 2020.  *See* Compl.

¶¶ 24-25 (citing https://www.youtube.com/watch?v=aK0KPNPveYY).

After opening his remarks at the rally with a rebuke of "the fake news," Bradshaw Decl.

Ex. A at 2:6-8, 3:4, President Trump criticized "[t]he radical left democrats in Washington" who

"are trying to burn it all down," referred to "impeachment" and decried "the far left's corruption"

and "sinister schemes" by "very dishonest people," *id.* at 5:6-5:20.  At this point, several minutes

into his remarks, the President turned to the coronavirus:

> Now the Democrats are politicizing the coronavirus, you know that right?
> Coronavirus, they're politicizing it. We did one of the great jobs. You say,
> "How's President Trump doing?" They go, "Oh, not good, not good." They have
> no clue. They don't have any clue. They can't even count their votes in Iowa.
> They can't even count. No, they can't. They can't count their votes.
>
> One of my people came up to me and said, "Mr. President, they tried to beat you
> on Russia, Russia, Russia." That didn't work out too well. They couldn't do it.
> They tried the impeachment hoax. That was on a perfect conversation. They tried
> anything. They tried it over and over. They'd been doing it since you got in. It's
> all turning. They lost. It's all turning. Think of it. Think of it. And this is their new
> hoax.
>
> But, you know, we did something that's been pretty amazing. We have 15 people
> in this massive country and because of the fact that we went early, we went early,
> we could have had a lot more than that. We're doing great.

*Id.* at 5:20-7:6 (emphasis added); *see also President Trump Campaign Event in North*

*Charleston, South Carolina*, https://cs.pn/3c5rVbI at 6:45.  President Trump then compared the

number of average deaths from the common flu to those from the coronavirus, and he derided

news reporting as "hysterical."  Bradshaw Decl. Ex. A at 8:11-13 ("You hear 35 and then 40,000

people [die from the flu] and we've lost nobody, and you wonder, the press is in hysteria

mode.").

President Trump's remarks at the rally, and particularly his use of the word "hoax" in

connection with the coronavirus, sparked intense controversy and debate—including over what

he actually meant when he said "this is their new hoax."  Immediately after the rally and in the days that followed, news outlets around the world reported that the President had labeled the coronavirus a "hoax"[5] or the "Democrats' new hoax."[6]  As the press went on to report, a number of President Trump's political opponents, including candidates in the Democratic primary, fiercely criticized his use of "hoax" at the rally.[7]

---

[5] Nancy Cook and Matthew Choi, *Trump rallies his base to treat coronavirus as a "hoax,"* Politico (Feb. 28, 2020), https://politi.co/353eSES (Bradshaw Decl. Ex. I); Phil Thomas, *Biden slams Trump over coronavirus 'hoax' claim: 'What in God's name is he talking about?',* The Independent (Mar. 1, 2020), https://bit.ly/35gdijn ("Addressing the president's reference to the [coronavirus] crisis as a 'hoax' during a political rally on Friday, Mr Biden said . . . .") (Bradshaw Decl. Ex. K); John Kennedy, *DeSantis' virus response likened to Trump missteps,* Sarasota Herald-Tribune (Mar. 2, 2020), https://bit.ly/3bBEI5m ("A couple of days later, [Trump] said [the coronavirus] could be a 'hoax,' used by Democrats to damage him politically.") (Bradshaw Decl. Ex. L).  The Court may take judicial notice of (and consider on this motion to dismiss) the articles because they are not offered for the truth of the statements made in them but for their existence, to demonstrate the public confusion and controversy about the import of President Trump's "hoax" statement.  *See, e.g.*, *Bardney v. United States*, 1998 U.S. App. LEXIS 13036, at *14 (7th Cir. June 16, 1998); *In re Copper Mkt. Antitrust Litig.*, 2003 U.S. Dist. LEXIS 21467, at *3 (W.D. Wis. Aug. 19, 2003); *see also, e.g.*, *Farah v. Esquire Magazine*, 736 F.3d 528, 534, 537, 538 (D.C. Cir. 2013); *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 85 (D.D.C. 2019); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 88 n.1, 93 (D.D.C. 2018).

[6] *See, e.g.*, Lauren Egan, *Trump calls coronavirus Democrats' "new hoax,"* NBC News (Feb. 28, 2020), https://nbcnews.to/2KyhHEv (Bradshaw Decl. Ex. M); Kevin Freking, *Trump lashes out at Dems, calls coronavirus their new "hoax,"* WBFF Fox45 (Feb. 28, 2020), https://bit.ly/3cPCP58 (Bradshaw Decl. Ex. N); Lev Facher, *Trump administration expands coronavirus travel ban to include Iran,* STAT News (Feb. 29, 2020), https://bit.ly/2VWWGZv ("Trump's remarks came the day after a campaign rally in South Carolina at which he called the coronavirus Democrats' 'new hoax' . . . .") (Bradshaw Decl. Ex. O); *Trump calls for calm as first coronavirus death reported in US,* France24 (Feb. 29, 2020), https://bit.ly/2S8bHqb ("[Trump] took a more measured tone a day after accusing Democrats of politicising the virus and referring to the epidemic as a Democrat 'hoax.'") (Bradshaw Decl. Ex. P).

[7] *See, e.g.*, Dareh Gregorian, *Democratic candidates hit Trump's coronavirus "hoax" claim* NBC News (Feb. 29, 2020), https://nbcnews.to/2S5bbcy (citing Joe Biden and Pete Buttigieg's reactions to the comment) (Bradshaw Decl. Ex. Q).

### C.  This Lawsuit

The Committee filed the Complaint in the Circuit Court for Price County on April 13, 2020, and served WJFW with the Complaint on April 15.  *See* Notice of Removal ¶¶ 1-2, Dkt. 1. WJFW timely removed the action to this Court on April 27, 2020.  Notice of Removal.

The Complaint alleges that the political advertisement defamed the Trump Campaign Committee by misrepresenting President Trump's "hoax" comment at the February 28 campaign rally: it "falsely represent[s] that the candidate stated . . . that the coronavirus is a 'hoax' when in fact, 'this' refers to the Democrats' exploitation of a pandemic and related characterization of the candidate's response to the pandemic as inadequate."  Compl. ¶ 30.  Though the advertisement never refers to the Committee, the Committee claims it concerned "the Trump campaign."  *Id.* ¶ 53.  The Committee further contends the ad is intended to "impede the purpose and goal of the Trump Campaign" and harmed it by "causing [people] not to vote for its candidate for reelection" and conveying that "the Trump Campaign does not believe the coronavirus pandemic is real."  *Id.* ¶¶ 54-55. The Committee very generally contends WJFW's broadcast of the ad "has forced, and will continue to force, [the Committee] to expend substantial funds on corrective advertisements."  *Id.* ¶ 56.

### LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted."  *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *accord Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017).

In this defamation action, brought by a public figure about a matter of public concern, the *Iqbal-Twombly* standard applies with equal force as in all civil litigation in the federal courts. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).  Numerous courts have also recognized that, because protracted litigation in public official/figure defamation actions will inevitably inhibit the exercise of First Amendment rights, the courts should closely scrutinize claims at the outset, and, where appropriate, dispose of them at the earliest possible stage.  *See, e.g.*, *Torgerson v. Journal/Sentinel Inc.*, 563 N.W.2d 472, 479 n.14 (Wis. 1997) ("The threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, especially to advocates of unpopular causes.") (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) (internal marks omitted)); *Sullivan*, 376 U.S. at 279 ("compelling the critic of official conduct to guarantee the truth of all his factual assertions . . . dampens the vigor and limits the variety of public debate" and "is inconsistent with the First and Fourteenth Amendments").

As a practical matter, defamation cases are uniquely well-suited to early disposition because the law requires courts to perform a "gatekeeper" function at the outset of the case, ruling on whether the alleged speech is actionable in the first instance:

> [U]nlike in most litigation, in a libel suit the central event – the communication about which suit has been brought – is ordinarily before the judge at the pleading stage.  He or she may assess it upon a motion to dismiss, firsthand and in context. . . . Thus, courts routinely consider, on motions to dismiss, . . . issues such as whether the statement at bar is capable of bearing a defamatory meaning, . . . whether it is "of and concerning" the plaintiff, whether it is protected opinion, . . . and they frequently grant motions on these grounds and others.

2 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 16:2.1 (5th ed. 2017) (collecting cases).

## ARGUMENT

Under Wisconsin law, a defamation plaintiff must plausibly allege and ultimately prove four elements: (1) a "false and defamatory statement concerning [the plaintiff]"; (2) "an unprivileged publication to a third party"; (3) "fault amounting at least to negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Bay View Packing Co. v. Taff*, 543 N.W.2d 522, 529 (Wis. Ct. App. 1995); *see also Storms v. Action Wis. Inc.*, 2008 WI 56, ¶ 37, 750 N.W.2d 739, 748 (communication must "tend[] to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her"). The First Amendment holds public figures, like the Trump Campaign Committee, to the burden of pleading and proving "actual malice"—the publication of a falsehood knowingly or while in fact entertaining serious doubts about its truth. *Torgerson*, 563 N.W.2d at 477-78, 480 (citing *Sullivan*, 376 U.S. at 279-80; *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

The Trump Campaign Committee's lawsuit fails for several independent reasons: (1) as the allegedly defamatory statement at issue is about President Trump, and not the Committee, the Committee has no claim; (2) the political advertisement is a constitutionally protected opinion, not an actionable statement susceptible of being proven true or false; (3) the advertisement is not materially false in its full content and in the context of the widely publicized, ongoing national debate about the Administration's response to the coronavirus; and (4) the Committee has not alleged and cannot allege that the statements were published with "actual malice."

9

I.     THE ADVERTISEMENT IS NOT "OF AND CONCERNING" THE TRUMP
       CAMPAIGN COMMITTEE AND THEREFORE NOT DEFAMATORY OF IT

The Wisconsin Supreme Court made clear over a century ago that a plaintiff cannot

recover for defamation unless the alleged libel is about that plaintiff: "The defamatory words

must refer to some ascertained or ascertainable person, and that person must be the plaintiff."

*Arnold v. Ingram*, 138 N.W. 111, 117 (Wis. 1913) (emphasis added); *accord, e.g.*, *Giwosky v.*

*Journal Co.*, 237 N.W.2d 36, 40 n.9 (Wis. 1976); *Thompson v. Nat'l Catholic Reporter Publ'g*

*Co.*, 4 F. Supp. 2d 833, 840 (E.D. Wis. 1998).  The U.S. Constitution also requires a publication

to be "of and concerning" the plaintiff to support a defamation claim.  *Sullivan*, 376 U.S. at 288

(holding evidence "constitutionally defective" as it was "incapable of supporting the jury's

finding that the allegedly libelous statements were made 'of and concerning'" plaintiff); *accord*

*Rosenblatt v. Baer*, 383 U.S. 75, 80-83 (1966).  Put simply: "The 'of and concerning'

requirement stands as a significant limitation on the universe of those who may seek a legal

remedy for communications they think to be false and defamatory and to have injured them."

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399-400 (2d Cir. 2006) (Sack, J.).

Relatedly, the Trump Campaign Committee cannot prevail on its defamation claim

because, as a matter of law, the alleged false statement does not diminish the Committee's

reputation and therefore is not defamatory of it.  A statement is defamatory only if it "tends to

injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence

in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions

against him."  *Starobin v. Northridge Lakes Dev. Co.*, 287 N.W.2d 747, 751 (Wis. 1980).

Where, as here, a plaintiff alleges harm to its trade or profession, *see* Compl. ¶¶ 16, 73,

statements are not considered defamatory unless they "charge dishonorable, unethical, unlawful,

or unprofessional conduct."  *Liberty Mut. Fire Ins. Co. v. O'Keefe*, 556 N.W.2d 133, 136 (Wis.

Ct. App. 1996) (quoting *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1165-66 (7th Cir. 1987) (internal marks omitted)); *accord, e.g.*, *Quinn v. Overnite Transp. Co.*, 24 F. App'x 582, 586 (7th Cir. 2001).

The courts decide these twin questions—whether the alleged defamation is of and concerning the plaintiff and whether it is defamatory of the plaintiff—as a matter of law. *See, e.g.*, *Ogren v. Emp'rs Reinsurance Corp.*, 350 N.W.2d 725, 728 (Wis. Ct. App. 1984); *Giwosky*, 237 N.W.2d at 39-40. Courts in Wisconsin and elsewhere routinely dismiss claims at the pleading stage on these bases. *See, e.g.*, *Kirch*, 449 F.3d at 398-400; *Giwosky*, 237 N.W.2d at 39-40; *Sytkowski v. Mcgee*, 401 N.W.2d 182 (Wis. Ct. App. 1986); *Quinn*, 24 F. App'x at 586.

### A. The political advertisement, as a matter of law, is not about the Trump Campaign Committee.

The Committee's lawsuit runs headlong into these well-established protections for freedom of expression. These protections – developed over generations of careful consideration by the state and federal courts, including the U.S. Supreme Court's seminal ruling in *New York Times v. Sullivan* – apply with full force to this kind of political advertising.

On its face, WJFW broadcast a political advertisement about President Trump, not his Campaign Committee. The ad nowhere refers to the Committee, a distinct corporate entity that exists separate and apart from the President himself. Indeed, the President and Committee themselves have argued in other contexts that President Trump and his campaign organization are distinctly different actors. *See, e.g.*, *Response of Donald J. Trump For President, et al.* at 1 n.1, FEC MUR 7135 (Dec. 19, 2016), https://bit.ly/35feLGD (requesting that President-elect Trump be dismissed from FEC proceeding brought against both him and the Committee regarding campaign finance violation because "there are no allegations that pertain to him personally" and "to the extent he is relevant to this matter, it is only in his capacity as a candidate

whose principal campaign committee is Donald J. Trump for President, Inc.") (Bradshaw Decl. Ex. R); *Daily Press Briefing by Principal Deputy Press Secretary Sarah Sanders*, The White House (May 10, 2017), https://bit.ly/2y7xp73 (President's press secretary, in answering why the President had changed his view of former FBI Director James Comey, distinguished between his position as President and candidate: "As you guys all know, there's a very clear distinction between being 'President' and being 'a candidate in a campaign.'") (Bradshaw Decl. Ex. S).

The Complaint's unremarkable observations that the President is "the Trump Campaign's candidate" and "one of the many people authorized to speak" on the Committee's behalf, Compl. ¶¶ 12-13, is a failed attempt to plead around the "of and concerning" requirement.  It also misapprehends basic defamation law.  Defamation is a personal tort and, therefore, "a person may not base a defamation claim on statements that defame someone else."  *Harp v. Glock*, 2019 U.S. Dist. LEXIS 71149, at *16 (E.D. Wis. Apr. 25, 2019); *see also* 1 Rodney A. Smolla, *Law of Defamation* § 4:74 (2d ed. 2019 update) ("there can be no vicarious defamation, or defamation through guilt by association"); 1 *Sack on Defamation* § 2:9.5 (noting "the general rule that a statement about a person is only 'of and concerning' that person, not friends, relatives, or associates").

For this reason, in the corporate context, "[s]tatements which refer to individual members of an organization do not implicate the organization."  *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007); *see also*, RESTATEMENT (SECOND) OF TORTS § 561 cmt. b (1977) (corporation generally "not defamed by communications defamatory of its officers, agents or stockholders"); *Cohn v. Nat'l Broad. Co.*, 67 A.D.2d 140, 146 (N.Y. App. Div. 1979) (law firm member's defamation claim "cannot give rise to a derivative claim on behalf of his employer or partners in the firm, upon mere conclusory assertion that the reputation of the firm is inextricably

tied to Cohn as its principal producer of income"); *see also Kirch*, 449 F.3d at 398 ("A false disparaging statement about IBM, for example, would not, we think, ordinarily be a defamatory statement 'of and concerning' all of IBM's suppliers, employees and dealers, however much they may be injured as a result."); *Eyal v. Helen Broad. Corp.*, 583 N.E.2d 228, 232 (Mass. 1991) ("Whether a corporation's standing in the community was actually diminished is not relevant if the defendant's statement did not falsely charge the *corporation itself* with some kind of impropriety." (internal marks omitted)).

The political advertisement that WJFW broadcast concerns statements made by President Trump, not by the Trump Campaign Committee.  The ad therefore is not of and concerning the Plaintiff in this case; it is of and concerning President Trump.  President Trump did not bring this lawsuit—his campaign organization did.  For this reason alone, the Complaint fails to state a claim, and the Court should dismiss it with prejudice.

### B.  The political advertisement, as a matter of law, is not defamatory of the Committee.

The Committee tries to mask its efforts to blur the distinction between itself and President Trump by focusing on the allegedly harmful effects of the political advertisement on the Committee's work—the ad's impact on voters in the 2020 presidential election.  *See, e.g.*, Compl. ¶¶ 14-16, 54, 65, 67-68.  But the Wisconsin Supreme Court has made clear that, standing alone, a statement's impact on the electoral prospects of a candidate cannot form the basis of a defamation claim, even in a claim brought by the candidate himself.

In *Tatur v. Solsrud*, 498 N.W.2d 232 (Wis. 1993), incumbent candidates in a county board election alleged that statements published in a political advertisement days before the election were defamatory because they misrepresented the candidates' voting records.  *Id.* at 232-33.  The Supreme Court held as a matter of law that, even if the defendants' representations

were false and "deterred electors from voting for them," a statement is not actionably defamatory merely because it "causes some people to vote against the plaintiff." *Id.* at 234. Rather, a plaintiff "must show that the misrepresentation was defamatory on its face." *Id.*; *see also Quinn*, 24 F. App'x at 586 (holding as a matter of law that plaintiff failed to allege that statements were defamatory; allegation of loss of employment was "certainly a[n] injury, but not a harm to reputation compensable under defamation law").

Under Wisconsin law, even if President Trump (and not his Campaign Committee) had brought this lawsuit, the advertisement would not support a defamation claim based on the injury alleged or the words used. The Complaint's allegations that it would sway voters—precisely what any political advertisement (or, for that matter, newspaper editorial) is designed to accomplish—does not render this advertisement defamatory. For this reason as well, the Complaint fails to state a claim, and the Court should dismiss it with prejudice.

## II.     THE ADVERTISEMENT IS NOT AN ACTIONABLE DEFAMATION AS IT REFLECTS AN OPINION INCAPABLE OF BEING PROVEN TRUE OR FALSE, NOT A FACT

The Complaint also fails because the political advertisement reflects a subjective opinion about President Trump's policies, not a verifiable fact. Only expressions of verifiable fact can support defamation claims. An expression is not verifiable, and therefore is not actionable, unless it is reasonably capable of conveying a meaning that is provably true or false. *E.g.*, *Kaminske v. Wisconsin Cent. Ltd.*, 102 F. Supp. 2d 1066, 1080-81 (E.D. Wis. 2000) (allegedly defamatory phrase describing "idea and reaction in [one's] own head" was "not sufficiently factual to be susceptible of being proved true or false") (citing *Harris v. Quadracci*, 856 F. Supp. 513, 522 (E.D. Wis. 1994), *aff'd*, 48 F.3d 247 (7th Cir. 1995)); *Dilworth v. Dudley*, 75 F.3d 307, 309-11 (7th Cir. 1996) (words "too vague to be falsifiable" are nonactionable); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a

subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (citing, *inter alia*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17-21 (1990)).  In other words, opinions are not actionable.  *Marjala v. Fox News Network LLC*, 2017 WI App 7, ¶ 33, 2016 Wisc. App. LEXIS 805, at *18 (unpublished) (affirming dismissal of action based on nonactionable opinions) (Bradshaw Decl. Ex. J).  The Trump Campaign Committee itself appreciates the important First Amendment protection for opinion, having won dismissal of a defamation claim on grounds that the President's tweets were statements of opinion.  *Jacobus v. Trump*, 55 Misc. 3d 470, 472 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (N.Y. App. Div. 2017).

Here, the political advertisement as a whole reflects not a verifiable fact, but Priorities USA's opinion that the President dangerously downplayed the risk from coronavirus in the early part of 2020.  The validity of that opinion is not for a court to decide.  Instead, whether President Trump fully understood and responded appropriately to this danger to public health is for voters to decide in the 2020 presidential election.

### A.  The Court must consider the entire political advertisement.

In defamation cases, courts do not consider snippets of a publication in isolation, nor do they defer to the plaintiff's interpretation of the words in a complaint.  Instead, the court construes the challenged statements "in the plain and popular sense in which they would naturally be understood," and in "[t]he context and circumstances in which the statements were made."  *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶ 19, 840 N.W.2d 255, 265 (citations and internal marks omitted); *Dilworth*, 75 F.3d at 309 (whether a challenged statement is actionably defamatory can be determined "only by considering the context in which the term appears").  This means the Court cannot, as the Committee does in the Complaint, "parse out

individual pieces of a defendant's statement"; it must "consider the broadcast as a whole, 'not in detached fragments.'"  *Marjala*, 2017 WI App 7, ¶ 17, 2016 Wisc. App. LEXIS 805, at *8-9; *Kaminske*, 102 F. Supp. 2d at 1080-81 (analyzing statement in context, not "standing alone," and concluding it was not defamatory).  Especially with expressions of political opinions, courts recognize the importance of construing an alleged defamation in its context.

For example, in *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6 (1970), the U.S. Supreme Court held that in the context of news articles about a political controversy, referring to a developer's negotiating tactics with municipal officials as "blackmail" was "rhetorical hyperbole," a form of protected expression, and not a statement of verifiable fact. *Id.* at 13-14.  The Court noted the core value of this form of speech, and the strong First Amendment protection it deserves: "The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means is a fundamental principle of our constitutional system."  *Id*. at 11 (internal marks omitted).  The lower courts, too, have recognized that "courts shelter strong, even outrageous political speech, on the ground that the ordinary reader or listener will, in the context of political debate, assume that vituperation is some form of political opinion neither demonstrably true nor demonstrably false."  *Adelson v. Harris*, 973 F. Supp. 2d 467, 489 (S.D.N.Y. 2013) (quoting 1 *Sack on Defamation* § 4:3:1, and collecting cases), *aff'd* 876 F.3d 413 (2d Cir. 2017); *see also West v. Thomson Newspapers*, 872 P.2d 999, 1019 (Utah 1994) ("Courts are much more likely to construe statements as opinion when they are made by participants in, and people who comment on, political campaigns.").

### B.  The political advertisement expresses a constitutionally protected opinion.

The single statement by the President that the Committee takes issue with, "this is their new hoax," was broadcast in the context of a clearly labeled political advertisement, as part of a

long series of other statements that President Trump himself made, and concluding with a call to action—all in the midst of the presidential primary in Wisconsin.  The ad as a whole expresses the view that the President's minimization of the coronavirus makes him a dangerous and untrustworthy leader.  In addition to the five words the Trump Campaign Committee highlights, the advertisement contains President Trump's expressions that:

- "We have it totally under control"

- "It's only one person coming in from China"

- "When you have 15 people and within a couple of days is going to be down to close to zero"

- "We really think we've done a great job in keeping it down to a minimum"

- "I like this stuff"

- "I really get it"

- "People are surprised that I understand it"

- "No, I don't take responsibility at all"

Priorities USA Ad.

The political advertisement's sponsor casts this audio—all the President's own language, from public addresses delivered in the early months of the crisis—against a visual depiction of the early 2020 spike in COVID-19 cases and the image of President Trump's face.  The ad closes with the narration:  "America needs a leader we can trust.  Priorities USA Action is responsible for the content of this ad," while a longer Priorities USA sponsorship note appears in text on screen.

The courts have already noted that, in the context of discussions of public affairs, the use of the word "hoax" itself signals to the audience that the speaker is expressing an opinion.  That word has become a ubiquitous tool in the arsenal of political rhetoric, used almost as frequently

as the term "fake news." *See, e.g.*, *Montgomery v. Risen*, 197 F. Supp. 3d 219, 249 (D.D.C. 2016) ("A person's opinion concerning which events rank among the greatest hoaxes in American history is a quintessential example of a subjective opinion."); *Yeager v. Nat'l Pub. Radio*, 2018 U.S. Dist. LEXIS 127749, at *20 (D. Kan. July 31, 2018) (concluding that "[t]he use of the term 'hoax' is a subjective opinion supported by disclosed facts").

Moreover, in the context of this clear political statement, reasonable viewers understood that the named sponsor of the advertisement did not believe that President Trump, based on his reactions to the coronavirus in early 2020, was "a leader we can trust." The President's statement, "this is their new hoax"—whatever he thought then, or thinks now, that he meant— was part of several months of the Administration's public reactions to the crisis, and as the context of the advertisement makes clear, the sponsor believes that reaction unworthy of "trust." Defamation law long has recognized that statements about the trustworthiness of a public official, on matters of policy, warrants the highest protection under the First Amendment. *See, e.g.*, *Ocala Star-Banner v. Damron*, 401 U.S. 295, 300-01 (1971) ("Public discussion about the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* rule."); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1068 (9th Cir. 1998) ("statements of opinion concerning whether a person who holds high public office is fit for that office or is competent to serve in that position are protected under the First Amendment"); *Dilworth*, 75 F.3d at 310 (in related context of scientific controversy, where plaintiff contended his actual words were misstated by defendant, court upheld dismissal of defamation claim because defendant's expression was "just a colorful and insulting way of expressing disagreement with [plaintiff's] master idea").

To the extent the Committee believes President Trump's words "this is their new hoax" were misinterpreted, the blame rests with their candidate, not the many who have quoted him. Indeed, just last week, faced with a very similar argument arising out of a dispute over commercial advertising for beer, the Seventh Circuit, in an opinion by Judge Easterbrook, observed:  "By choosing a word such as 'ingredients' with multiple potential meanings, Molson Coors brought this problem on itself."  *Molson Coors Bev. Co. USA LLC v. Anheuser-Busch Cos., LLC*, 2020 U.S. App. LEXIS 14019, at *6 (7th Cir. May 1, 2020) (court, in Lanham Act case, held ad campaign not actionable); *see also Marjala*, 2017 WI App 7, ¶33, 2016 Wisc. App. LEXIS 805, at *17 ("the coverage 'probably was embarrassing and unflattering' to [plaintiff], but [plaintiff] had put much of the information on the internet himself").  As with the marketplace of ideas underlying all political debate in our country, *see Sullivan*, 376 U.S. at 269-70, Judge Easterbrook observed that "[i]f Molson Coors does not like the sneering tone of Anheuser-Busch's ads, it can mock Bud Light in return.  Litigation should not be a substitute for competition in the market."  *Molson Coors*, 2020 U.S. App. LEXIS 14019, at *6.

If the Committee believes the advertisement is false, it is entitled to say so.  It is entitled to run its own advertisements (and it has[8]).  What it may not do, under the Constitution, is use the judicial system as a vehicle for the suppression of core political speech.  The First Amendment affords "the broadest protection" to the "[d]iscussion of public issues and debate on the qualifications of candidates."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citation omitted).  And the constitutionally appropriate remedy for allegedly false political speech is not legal sanction, but counterspeech.  "Especially as to political speech, counterspeech is the tried and true buffer and elixir."  *281 Care Comm. v. Arneson*, 766 F.3d 774, 793 (8th Cir.

---

[8] *See, e.g.*, *Trump Campaign Launches "American Comeback" National Ad*, Donald J. Trump for President, Inc. (May 4, 2020), https://bit.ly/2YBiQDG (Bradshaw Decl. Ex. T).

2014).  The First Amendment envisions that citizens will "discern for themselves what the truth is"—not that judges and juries will decide that for them. *Id.*

The Complaint fails to state a claim for defamation because it does not identify a verifiable fact capable of sustaining a claim; it challenges a protected opinion in the form of a clearly identified political advertisement, core speech the Constitution carefully safeguards.  For this reason as well, the Court should dismiss this action with prejudice.

## III.   THE ADVERTISEMENT'S PORTRAYAL OF THE PRESIDENT'S STATEMENT "THIS IS THEIR NEW HOAX" IS SUBSTANTIALLY TRUE

Even if President Trump's "hoax" statement, as portrayed in the context of the political advertisement, were capable of verification, the claim would still fail.  As a matter of law, the portrayal is not false.

To be actionable, a statement must be *materially* false—that is, it must "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); *see also, e.g.*, *John v. Journal Commc'ns, Inc.*, 801 F. Supp. 210, 212 (E.D. Wis. 1992) (same).  Because the "law of libel . . . overlooks minor inaccuracies," technical falsity alone does not suffice to support a defamation claim.  *Masson*, 501 U.S. at 516-17.

As with the other elements of the defamation cause of action, courts routinely hold at the pleading stage that statements are not materially false based on the record before them.  For example, in *John v. Journal Commc'ns, Inc.*, the court dismissed an action against a newspaper publisher after comparing the allegedly defamatory statement, reporting plaintiff's misconduct as director and trustee of a charitable foundation, with findings of fact from prior civil litigation. 801 F. Supp. at 213-14.  Though plaintiff was found in that litigation to have "engaged in serious violations of security laws," he contended that the newspaper's more specific allegation that he

2em

engaged in "greenmail" was false.  *Id.* at 213.  On that record, the court held that the gist of statement was that the plaintiff "violated the security laws, not how he did it," *id.*—making the newspaper's statement substantially true and therefore nonactionable.

As a matter of law, the political advertisement's portrayal of the President's words was not materially false.  President Trump made the statement "this is their new hoax" at a South Carolina political rally in which he also used the words "the impeachment hoax" to characterize the House impeachment and Senate proceedings in December 2019 and January 2020 as an unfounded political controversy.  He compared that to the coronavirus—"their new hoax"— which, he told the rally, "[n]ow the Democrats are politicizing."  He responded to their criticism by boasting to the rally: "We did one of the great jobs."  And he continued to minimize the threat while boasting about the Administration's response by saying: "We have 15 people in this massive country and because of the fact that we went early, we went early, we could have had a lot more than that. We're doing great."  Bradshaw Decl. Ex. A at 5:20-7:6; *President Trump Campaign Event in North Charleston, South Carolina*, https://cs.pn/3c5rVbI at 6:45; *see also* p. 27 *infra* (Trump suggested right after the "hoax" remark that the coronavirus is not as bad as the flu).

The clear gist of President Trump's remarks at the rally was his belief that, contrary to his opponents' views, the coronavirus threat was small and under control, and that—just as he believed that he had in the impeachment controversy—the Administration's response to the crisis was "great."  The Priorities USA political advertisement—which accurately repeats the President's representations that the infection of "15 people" and "only one person coming in from China," that his Administration has the situation "totally under control" and has "done a great job keeping it down to a minimum," and that his critics' alarm is "their [latest hoax]"—

conveys precisely the same gist as the President conveyed at his rally.  *Compare* Bradshaw Decl. Ex. A 5:20-7:6, *with* Bradshaw Decl. Ex. F.

In an effort to avoid the actual meaning the ad as a whole reasonably conveys, the Committee asserts a libel by implication claim.  It alleges that with a montage of separate statements by the President about COVID, the ad falsely implies "the Trump campaign does not believe the coronavirus pandemic is real."  Compl. ¶¶ 23-29, 55.  This argument fails for two reasons.  First, it ignores settled law that instructs trial courts, as with the determination of whether an expression is an opinion, to consider the "context" and surrounding "circumstances" in determining whether the expression is false.  *Terry*, 2013 WI App 130, ¶ 19, 840 N.W.2d at 265.  As set forth above, that full context demonstrates the statement's truth.

Moreover, the Committee has not, because it cannot, alleged that WJFW *intended* to convey that implication, an important requirement when a public official bases a defamation claim on an alleged implication.  *See, e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 148 (D.D.C. 2017) (noting that "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference" is required) (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)); *accord, e.g.*, *Woods v. Evansville Press Co*., 791 F.2d 480, 487-88 (7th Cir. 1986) ("[R]equiring a publisher to guarantee the truth of all the inferences a reader might reasonably draw from a publication would undermine the uninhibited, open discussion of matters of public concern.  A publisher reporting on matters of general or public interest cannot be charged with the intolerable burden of guessing what inferences a jury might draw from an article and ruling out all possible false and defamatory innuendoes that could be drawn from the article."); 1 *Sack on Defamation* § 5:5.1[b] (collecting cases); *see also Michel v. NYP Holdings, Inc*., 816 F.3d 686, 702 (11th Cir. 2016) ("*Iqbal* itself directly held that

malice *and other degrees of intent* are subject to the plausibility pleading standard.").  The Committee's allegations about the editing of the montage cannot support a defamation claim.  *See Terry*, 2013 WI App 130 ¶ 26, 840 N.W.2d at 267-68 (rejecting defamation by implication claim arising from video edits containing "altered" images of plaintiff brawling that she contended made her look like a "freakish and dangerous person"; plaintiff "cannot maintain a defamation action for how she *feels* she was portrayed").

As the advertisement WJFW broadcast is not a materially false reflection of the President's statements, it cannot support a defamation claim.  For this reason as well, the Court should dismiss the lawsuit with prejudice.

## IV.   THE TRUMP CAMPAIGN COMMITTEE HAS NOT PLAUSIBLY ALLEGED ACTUAL MALICE

The First Amendment stands as the sentinel that ensures lawsuits like this one, filed by a public figure seeking to chill political speech, do not stifle the public debate essential to democracy.  For this reason, the law requires that the Trump Campaign Committee plausibly plead, and prove through clear and convincing evidence, that WJFW made the allegedly defamatory statement with "actual malice"—*i.e.*, with knowledge of its falsity or a "high degree of awareness of its probable falsity."  *Harris v. Quadracci*, 48 F.3d 247, 252 (7th Cir. 1995) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (internal marks omitted)); *Sullivan*, 376 U.S. at 279-80; *Grzelak v. Calumet Publ'g Co.*, 543 F.2d 579, 582 (7th Cir. 1975) (actual malice standard exists "to prevent persons from being discouraged in the full and free exercise of their First Amendment rights" (citation omitted)).  The actual malice standard is subjective—"reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing."  *St. Amant*, 390 U.S. at 731.  The defendant must have in fact "entertained serious doubts as to the truth of his publication."  *Id.*

Following the Supreme Court's Rule 12(b)(6) decisions in *Iqbal* and *Twombly*, the Seventh Circuit has stringently applied the heavy actual malice burden at the pleading phase, requiring allegations that would *plausibly* establish the defendant knew the allegedly defamatory statements were false or subjectively entertained serious doubts.  *Pippen*, 734 F.3d at 614 ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible."); *see also Michel*, 816 F.3d at 702 ("*Iqbal* itself directly held that malice and other degrees of intent are subject to the plausibility pleading standard.").  Every federal appellate court presented with the issue has held that, where actual malice is an element of a defamation claim, a complaint lacking plausible factual allegations that support a finding of actual malice must be dismissed.  *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018); *Michel*, 816 F.3d at 704; *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1219-20 (10th Cir. 2014); *Mayfield v. NASCAR*, 674 F.3d 369, 377 (4th Cir. 2012).  To plausibly plead actual malice, as with any other element of a claim, the plaintiff must include more than conclusory allegations or legal conclusions masquerading as factual assertions; "[b]are assertions of the state of mind required for the claim . . . must be supported with subsidiary facts."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013).

The Trump Campaign Committee, concededly a public figure,[9] has not met its burden to plausibly plead facts that would establish WJFW published the Priorities USA advertisement with knowledge that the ad's portrayal of President Trump's "hoax" statement was false or probably false.  The Committee's allegations do not even come close.  The Complaint rests its actual malice pleading entirely on a handful of articles from websites and a letter the Committee sent to WJFW after it began airing the ad, asserting that the President had not, in fact, called the

---

[9] The Committee has pleaded, in every other lawsuit it has filed against media entities, that it is a public figure.  *See* Dkt. 1-2 at 81, 89, 100.

coronavirus a hoax.  *See, e.g.*, Compl. ¶¶ 69-71; *id.* Ex. G.  But the mere fact that the Committee

denied the truth of the ad's statements is of no moment. *See, e.g.*, *Harte-Hanks Commc'ns, Inc.*

*v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (noting that "the press need not accept denials,

however vehement" (internal marks and citation omitted)); *Jankovic v. Int'l Crisis Grp.*, 822

F.3d 576, 590 (D.C. Cir. 2016) ("Nor, further, does it suffice for a plaintiff merely to proffer

purportedly credible evidence that contradicts a publisher's story." (internal marks and citation

omitted)); *Lemelson v. Bloomberg L.P.*, 253 F. Supp. 3d 333, 340-41 (D. Mass. 2017) ("If a

subject's simple denial is sufficient to demonstrate that subsequent publication shows a reckless

disregard for the truth, then no disputed fact could ever safely be published."), *aff'd*, 903 F.3d 19

(1st Cir. 2018).

As for the articles the Complaint cites, courts recognize that where the defendant's

statements are consistent with news reports or one side's interpretation of a political event, no

plausible actual malice claim will lie.  *See* notes 5-6 *supra* (news articles reflecting multiple

views of what President Trump said); *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994)

(public figure plaintiff cannot "silence those who hold divergent views, no matter how adverse

those views may be to plaintiffs' interests"); *Arpaio*, 404 F. Supp. 3d at 85 (court holds, in

former Sheriff Joe Arpaio's defamation suit over opinion column about his official conduct, that

given "publicly reported news events and judicial decisions underpinning the Article's claims . . .

there is ample reason to reject Plaintiff's claim that 'Defendants could not possibly have

believed' the truthfulness of the Article's assertions of fact" (citation omitted)); *Fairbanks*, 314

F. Supp. 3d at 93 (in defamation case arising from publication reporting that plaintiff flashed a

"white power" gesture, "[e]specially given the public debate about the 'okay' hand gesture at the

time of Ms. Roller's tweet, Ms. Fairbanks' allegations do not provide clear and convincing

evidence of actual malice.").

Here, the significant debate over what President Trump really meant following his statement "this is their new hoax," and his own attempt to clarify that meaning the very next day,[10] demonstrate that no plausible claim of actual malice will ever lie against WJFW.  The U.S. Supreme Court has made clear that a publication reflecting "one of a number of possible rational interpretations" of an event "that bristled with ambiguities" will not support a plausible actual malice claim.  *E.g.*, *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971).  Both the U.S. and Wisconsin Supreme Courts have since reaffirmed this "rational interpretation" bar to actual malice claims. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512-13 (1984) (product reviewer's account of experience listening to music from loudspeakers, "though reflecting a misconception," was rational interpretation of the events and could not give rise to finding of actual malice); *Torgerson*, 563 N.W.2d at 482 (reporter's characterization of letters to plaintiff from ethics board regarding potential conflicts of interest was "a rational interpretation of ambiguous statements contained in those letters" and could not constitute actual malice); *see also Storms*, 2008 WI 56, ¶ 57, 750 N.W.2d at 752 (finding that circuit court reasonably concluded that defamation action was frivolous where defendant's statements were "based on one of at least two rational interpretations" of plaintiff's speech, noting that "[t]here is ample case law for the proposition that actual malice cannot be inferred from the choice of one rational interpretation over another").

Here, the political advertisement reflected a rational interpretation by Priorities USA of President Trump's comments about the coronavirus at the rally.  He referred to the virus as

---

[10] *See Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Conference*, The White House (Feb. 29, 2020), https://bit.ly/2WmWUcy (Bradshaw Decl. Ex. U).

"their new hoax" after first criticizing the Democrats' "politicizing" of the crisis and mocking

them for everything from the counting delays and errors at the Iowa caucuses, to their failure to

"beat" him with the investigation into Russian electoral interference, to the impeachment "hoax."

*See* pp. 5-6 *supra*.  If there was any doubt about what he meant by the "hoax" comment at that

point, his next words saying the severity of the crisis was being exaggerated cleared it up:

> So a statistic that we want to talk about... 35,000 people on average die each year
> from the flu.  Did anyone know that, 35,000?  That's a lot of people.  It can go to
> 100,000, it can be 27,000.  They say usually a minimum of 27, it goes up to a
> hundred thousand people a year die, and so far we have lost nobody to
> coronavirus in the United States.  Nobody.  And it doesn't mean we won't, and
> we are totally prepared. It doesn't mean we won't, but think of it.  You hear 35
> and 40,000 people and we lost nobody, and you wonder, the press is in hysteria
> mode . . . .

Bradshaw Decl. Ex. A at 7:15-8:13.  While the Trump Campaign Committee characterizes the

"hoax" statement as a reference to "the Democrats' exploitation of a pandemic and related

characterization of the candidate's response to the pandemic as inadequate," Compl. ¶ 30, an

equally if not more rational interpretation is that the President cast the coronavirus as an

insignificant problem that the Democrats and the "fake news" were overstating for political

purposes. Indeed, that is exactly how he minimized "the impeachment hoax" and recast it as "a

perfect conversation."  Bradshaw Decl. Ex. A at 6:15-17.  Even over this past weekend,

President Trump continued to use "hoax" in his political rhetoric, condemning former President

George W. Bush's call for national unity:



**Donald J. Trump** ✔
@realDonaldTrump

[Follow]

.@PeteHegseth  "Oh bye the way, I
appreciate the message from former
President Bush, but where was he during
Impeachment calling for putting partisanship
aside." @foxandfriends  He was nowhere to
be found in speaking up against the greatest
Hoax in American history!

4:42 AM - 3 May 2020

At the very least, the President's "hoax" statement "bristled with ambiguities."  *Pape*, 401 U.S. at 290.  For this reason as well, the Complaint fails to state a claim for defamation.

## **CONCLUSION**

The Trump Campaign Committee tries to manufacture a defamation claim around the use of a word, "hoax," that the President himself injected into the public discussion of the COVID-19 pandemic.  He continues to use that word to attack opponents of his policies.

The voters will decide for themselves in the November election whether President Trump's actions, his reactions to criticism, and his expressions about a "hoax" in relation to a public health crisis reflect the right policies and the appropriate political rhetoric.  Broadcasters like WJFW should remain free from baseless defamation threats to air all sides of these issues.

For all of the foregoing reasons, WJFW respectfully requests that the Court grant its motion pursuant to Rule 12(b)(6), dismiss the Complaint with prejudice, and grant such other relief as appropriate under the circumstances.

Dated:  May 6, 2020

BALLARD SPAHR LLP

Charles D. Tobin
(admitted *pro hac vice*)
Al-Amyn Sumar
(admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Phone: (202) 661-2218
Fax:    (202) 661-2299
tobinc@ballardspahr.com
sumara@ballardspahr.com

Ashley I. Kissinger
(admitted *pro hac vice*)
1225 17th Street, Suite 2300
Denver, CO  80202
Phone: (303) 376-2407
Fax:    (303) 296-3956
kissingera@ballardspahr.com

Respectfully submitted,

GODFREY & KAHN S.C.

s/ *Brady Williamson*
Brady C. Williamson
Mike B. Wittenwyler
bwilliam@gklaw.com
mwittenwyler@gklaw.com
One East Main Street, Suite 500
Madison, WI 53703-3300
Phone: (608) 257-3911
Fax:    (608) 257-0609

*Counsel for Defendant Northland Television, LLC*
*d/b/a WJFW-NBC*