**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **DONALD J. TRUMP FOR PRESIDENT, INC.,** | |
| Plaintiff, | |
| v. | Civil No.: 20-cv-385-wmc |
| **NORTHLAND TELEVISION, LLC, d/b/a WJFW-NBC**, | |
| Defendant, | |
| **PRIORITIES USA ACTION**, | |
| Proposed Intervenor-Defendant. | |

**PROPOSED INTERVENOR-DEFENDANT PRIORITIES USA ACTION'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................... 1

II.    Background ........................................................................................................... 2

III.    Legal Standards ................................................................................................... 4

IV.    Argument ............................................................................................................. 6

        A.    The Campaign lacks standing to complain about the alleged false statements attributed to the President in his official capacity both jurisdictionally and substantively. .......................................................... 6

        B.    The Complaint Fails to State a Claim for Defamation Based on Priorities' Protected Political Speech.................................................................................. 10

                1.    Priorities' advertisement constitutes core First Amendment speech. ...... 10

                2.    The Trump Campaign cannot meet its burden to maintain this action.................................................................................................... 12

                        a.    Falsity............................................................................................ 12

                        b.    Actual Malice............................................................................... 18

V.    Conclusion ....................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................4, 5, 18

*Barlass v. City of Janesville*,
2011 WL 13187131 (W.D. Wis. Nov. 28, 2011)..........................................................7, 8, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................5, 18

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015) ...............................................................................................4

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
138 F. Supp. 3d 1191 (D. Colo. 2015), *aff'd*, 861 F.3d 1081 (10th Cir. 2017) ..................6, 17

*Brown v. Hartlage*,
456 U.S. 45 (1982)..........................................................................................10, 11, 14

*Buckley v. Valeo*,
424 U.S. 1 (1976) (per curiam)...........................................................................................10

*Chi. Dist. Counsel of Carpenters Pension Fund. v. Reinke Insulation Co.*,
464 F.3d 651 (7th Cir. 2006) ...........................................................................................18

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)..........................................................................................................10

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,
981 F. Supp. 112 (E.D.N.Y. 1997) ...................................................................................19

*Democratic Party of Wis. v. Vos*,
408 F. Supp. 3d 951 (W.D. Wis. 2019) ...............................................................................5

*Desert Sun Publ'g Co. v. Superior Court*,
158 Cal. Rptr. 519 (Ct. App. 1979) ...................................................................................22

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
489 U.S. 214 (1939)..........................................................................................................10

*Eyal v. Helen Broad. Corp.*,
411 Mass. 426 (1991) ..........................................................................................................8

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)..........................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

*Gregory v. McDonnell Douglas Corp.*,
    17 Cal. 3d 596 (Cal. 1976)..........................................................................................22

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)....................................................................................................22

*Hecker v. Deere & Co.*,
    556 F .3d 575 (7th Cir.2009) ........................................................................................3

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)......................................................................................................18

*HWAG, LLC v. Racine Car Dealer LLC*,
    2017 WL 6501914 (E.D. Wis. Dec. 19, 2017) .............................................................5

*Hy Cite Corp. v. Regal Ware, Inc.*,
    2011 WL 1206768 (W.D. Wis. Mar. 15, 2011)........................................................4, 5

*In re Storms v. Action Wis. Inc.*,
    2008 WI 56 ....................................................................................................12, 20, 21

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (Ct. App. 2019).........................................................................17

*Kassowitz v. Sentinel Co.*,
    226 Wis. 468 (1938) .....................................................................................................7

*Laughland v. Beckett*,
    2015 WI App 70..........................................................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................5, 6

*Mach v. Allison*,
    2003 WI App 11..........................................................................................................15

*Madison v. Frazier*,
    539 F.3d 646 (7th Cir. 2008) .................................................................................12, 18

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1999)............................................................................................. passim

*Mitchum v. Capps*,
    Case No. 148704, slip op. ...........................................................................................17

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ......................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971)..............................................................22

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
163 F.3d 449 (7th Cir. 1998) .................................................9

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).............................................................12

*Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*,
418 U.S. 264 (1974).........................................................12, 22

*Palm Springs Tennis Club v. Rangel*,
86 Cal. Rptr. 2d 73 (1999) .................................................8, 9

*Piersall v. SportsVision of Chi.*,
595 N.E.2d 103 (1992)..........................................................18

*Pippen v. NBCUniversal Media, LLC*,
734 F.3d 610 (7th Cir. 2013) ............................................6, 18

*Schoenfeld v. Journal Co.*,
235 N.W. 442 (Wis. 1931), *aff'd sub nom. Barlass v. City of Janesville, Wis.*,
483 F. App'x 261 (7th Cir. 2012) ...........................................7

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .................................................5

*St. Amant v. Thompson*,
390 U.S. 727 (1968)..............................................................18

*Starobin v. Northbridge Lakes Dev. Co.*,
94 Wis. 2d 1 (Ct. App. 1980)..................................................5

*Tannenbaum v. Foerster*,
648 F. Supp. 1300 (E.D. Wis. 1986), *aff'd*, 863 F.2d 885 (7th Cir. 1988) ............7

*Terry v. Journal Broad. Corp.*,
2013 WI App 130...................................................................15

*Torgersen v. Journal/Sentinel, Inc.*,
210 Wis. 2d 524 (1997) .................................................6, 12, 20

*Van Straten v. Milwaukee Journal Newspaper–Publisher*,
151 Wis. 2d 905 (Ct. App. 1989)...........................................21

## TABLE OF AUTHORITIES

**Page(s)**

*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000)....................................................................................................5

*Washington Post Co. v. Keogh*,
  365 F.2d 965 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967) .......................6

*Wesbrook v. Ulrich*,
  90 F. Supp. 3d 803 (W.D. Wis. 2015) .....................................................................5

*Wesbrook v. Ulrich*,
  2014 WL 811786 (W.D. Wis. Mar. 3, 2014)..........................................................7

*Whitney v. Cal.*,
  274 U.S. 357 (1927)................................................................................................11

### OTHER AUTHORITIES

Fed. R. Civ. P. 12......................................................................................................2, 10

Fed. R. Civ. P. 24............................................................................................................4

Restatement (Second) of Torts § 561 (1977)..................................................................8

Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6), proposed intervenor-defendant Priorities USA Action ("Priorities") submits this Memorandum in support of its Motion to Dismiss.

## I.        Introduction

This action is brought not by President Trump, but by *Donald J. Trump for President, Inc*., which is the President's official 2020 reelection campaign (the "Campaign"). Yet, the Complaint (ECF No. 1-2) makes no assertion that anyone has defamed the Campaign in any way. Instead, it is based entirely on the Campaign's contention that a 30-second advertisement produced by Priorities that criticizes President Trump's handling of the coronavirus pandemic by playing audio of *the President's own public statements* is defamatory of President Trump, because—it alleges— the advertisement "stitched together audio clips" to defamatory effect.

As a threshold matter, the Campaign lacks standing to bring a claim for defamation based on alleged misleading quotations of the President and critique of his performance in his official capacity, in an advertisement that does not implicate the conduct of the Campaign in any way.  If the Campaign has standing to do so, any organization supporting the candidacy of a politician for re-election, or for which that politician serves as the figurehead, could come to court any time that politician is criticized for acts taken in their official elected capacity.  As of February 18, 2019, that would include at least "a dozen or so major nonprofits and super PACs pushing [the President's] policy platform and priming the public for [his] 2020 re-election campaign."[1]  But neither Article III nor Wisconsin defamation law permits corporations to bring actions based on the alleged defamation of an individual, rather than the corporation itself, in circumstances

---

[1] https://publicintegrity.org/politics/donald-trump-army-super-pacs-maga-nonprofits/ (February 18, 2019, *Inside Donald Trump's Army of Super PACs and MAGA Nonprofits*).

analogous to those here. The Complaint must therefore be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), (b)(6).

But even if those jurisdictional issues were resolved, the Complaint also fails to state a legally cognizable claim for defamation. It is undisputable that the advertisement is immediately recognizable as political speech criticizing the President, and thus constitutes core political speech that is subject to the First Amendment's most vigorous protections. The advertisement clearly would have been understood by its audience as such. This contextual reality, as well as the exceedingly high bar that the Campaign must clear in light of *New York Times v. Sullivan*'s actual malice standard, make plain that this litigation is intended to intimidate Trump's critics and the stations that give air time to their criticism, and is not an action that can succeed on the merits. Indeed, the Complaint itself does not dispute that the President made the two challenged statements that it now claims act together to defame him. Instead, it alleges that the advertisement took the President's quotes out of context, Compl. ¶ 1, but the case law is littered with decisions that require the conclusion that such a claim, particularly in this context, cannot possibly succeed. At most, Priorities' advertisement adopted a rational interpretation of ambiguous statements by a public figure, which the Wisconsin Supreme Court has held cannot be defamation *as a matter of law*. The President, to be sure, gravely misjudged what the coronavirus had in store for the United States. As a result, he may very well now regret having made these remarks, but his regrets about them (or his Campaign's discomfort with the prospect of having to explain them) cannot sustain the Complaint. Thus, in the alternative the Complaint must be dismissed for failure to state a claim as a matter of law. *See* Fed. R. Civ. P. 12(b)(6).

## II.     Background

The facts necessary to decide this motion are set forth in the Complaint, and in appropriately considered material submitted in connection with Defendant Northland Television,

LLC d/b/a WJFW-NBC's ("WJFW-NBC") separate motion to dismiss (ECF No. 8).[2]  On February

28, 2020, the President gave a speech at an event in North Charleston, South Carolina.  Compl. ¶

24.  At that event, the President "covered a number of issues, including the coronavirus pandemic."

*Id.* ¶ 25.  The Complaint concedes the President stated the two phrases, "the coronavirus" and "this

is their new hoax," within approximately one minute of each other during that speech.  *Id.* ¶ 25.

As WJFW-NBC's memorandum highlights, the President's speech included additional comments

that downplayed the significance of the virus, such as noting the yearly deaths caused by the flu,

that "we ha[d] lost nobody to coronavirus in the United States," and arguing that the "press [wa]s

in hysteria mode."  ECF No. 9 at 27 (quoting Declaration of Jill Bradshaw ("Bradshaw Decl.")

(ECF No. 10), Ex. A (ECF No. 10-1) (transcript of 2/28/2020 speech) at 7:15-8:13).

Subsequently, Priorities created an advertisement addressing the President's handling of

the pandemic, part of which included audio from the South Carolina speech.  Compl. ¶¶ 22-24;

ECF No. 9 at 2-4.   The advertisement criticized the President's response, including his

downplaying of the virus's severity as a Democratic and media "hoax."  In all, the advertisement

contains the following sixteen "slides," the first fifteen containing audio of the President speaking

and corresponding subtitles:

> (1) The coronavirus, (2) this is their new hoax (3) We have it totally under control.
> (4) It's one person coming in from China. (5) One day, it's like a miracle, it will
> disappear. (6) When you have 15 people (7) and within a couple of days (8) is going
> to be down to close to zero. (9) We really think we've done a great job (10) in
> keeping it down to a minimum. (11) I like this stuff (12) I really get it. (13) People
> are surprised (14) that I understand it. (15) NO, I DON'T TAKE
> RESPONSIBILITY AT ALL. (16) AMERICA NEEDS A LEADER WE CAN
> TRUST

ECF No. 9 at 3-4; *see also id.* n.3 (noting correction of website address cited in Complaint).

---

[2] *See, e.g.*, *Hecker v. Deere & Co.*, 556 F .3d 575, 582 (7th Cir.2009) (finding court may consider documents to which complaint referred, which are concededly authentic and "central to" claim).

On April 13, 2020, the Campaign brought suit against WJFW-NBC in Price County Circuit Court, alleging defamation based on the first two slides in Priorities' advertisement.   The Campaign alleges that those first two slides "create . . . a false message by manufacturing fake audio and using such fake audio to create a false, captioned quotation, in both cases to make it appear as though candidate Trump said the phrase 'The coronavirus, this is their new hoax.'" Compl. ¶ 30.  The Campaign specifically contends that the first two slides in the advertisement are false because the word "this" in the second slide "refers to the Democrats' exploitation of a pandemic and related characterization of the candidate's response to the pandemic as inadequate." *Id.* While the Complaint thus concedes that the advertisement attributes the alleged false statement to the President, the Complaint nonetheless alleges the statement is "represented to be made on behalf of the Trump *Campaign*," and "made to harm the reputation of the Trump *Campaign*." *Id.* ¶¶ 55, 67 (emphasis added).

On April 27, 2020, WJFW-NBC removed this action to federal court, where it currently resides.  ECF No. 1.[3]  WJFW-NBC filed a motion to dismiss as its responsive pleading on May 6, 2020 (ECF No. 8), and thus has not yet answered the Complaint.  Pursuant to Fed. R. Civ. P. 24(c), this Motion to Dismiss accompanies Priorities' concurrently filed Motion to Intervene.

### III.   Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10 CV 168 WMC, 2011 WL 1206768, at *2 (W.D. Wis. Mar. 15, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009)).  While the Court must accept well-pled facts as true, *Bible v. United Student*

---

[3] On May 7, 2020, the Campaign filed a Motion to Remand the action back to Price County Circuit Court.  ECF No. 13.  To the extent this case proceeds and Priorities' motion to intervene is granted, Priorities would request the opportunity to file a response to the Motion to Remand.

*Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015), it is not "bound to accept as true a legal conclusion couched as a factual allegation," nor need it accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 570 (2007).

At the outset, a complaint must allege facts sufficient to establish standing, which "is a jurisdictional prerequisite under Article III of the Constitution." *Hy Cite Corp.*, 2011 WL 1206768, at *3 (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). This requires that "[e]very plaintiff must show that (1) it has suffered an actual and concrete injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) the injury is likely capable of being redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). "In determining whether a plaintiff has adequately pleaded the requirements for standing, the court applies the same standard that it applies to motions to dismiss for failure to state a claim: a complaint must contain sufficient factual matter, accepted as true, to plausibly allege each of the requirements for standing." *Democratic Party of Wis. v. Vos*, 408 F. Supp. 3d 951, 954–55 (W.D. Wis. 2019) (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015)). "The court must draw reasonable inferences in favor of the plaintiff but may not accept conclusory allegations." *Id.*

With respect to the Campaign's claim, "[c]omplaints that merely provide vague and conclusory allegations are insufficient to state a claim for defamation[.]" *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. 2015) (citing *Bell Atl.*, 550 U.S. at 555). "[I]f a communication cannot reasonably be considered defamatory, the claim should be dismissed." *HWAG, LLC v. Racine Car Dealer LLC*, No. 17-CV-821, 2017 WL 6501914, at *4 (E.D. Wis. Dec. 19, 2017) (citing *Starobin v. Northbridge Lakes Dev. Co.*, 94 Wis. 2d 1, 10 (Ct. App. 1980)). Moreover,

- 5 -

where defamation is claimed by a public figure, the complaint must allege adequate facts of "actual malice" to survive a motion to dismiss. *See, e.g.*, *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 612 (7th Cir. 2013).

These pleading requirements are particularly important where, as here, the claim arises in the type of spirited political debate that is viewed as core First Amendment speech, entitled to the Constitution's most vigorous and vigilant protection. In such cases, "[b]ecause the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, either by motion to dismiss or summary judgment, is appropriate." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F. Supp. 3d 1191, 1199 (D. Colo. 2015), *aff'd*, 861 F.3d 1081 (10th Cir. 2017). Indeed, as the Wisconsin Supreme Court has recognized, "[i]n the First Amendment area, summary procedures are even more essential. For the stake here, if harassment succeeds, is free debate." *Torgersen v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524 (1997) (quoting *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966), *cert. denied*, 385 U.S. 1011 (1967)); *see also id.* (observing that absent such scrutiny, "[t]he threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself").

## IV.    Argument

**A.    The Campaign lacks standing to complain about the alleged false statements attributed to the President in his official capacity both jurisdictionally and substantively.**

To satisfy the foremost injury-in-fact requirement for standing, a plaintiff must plead facts to show it has suffered "invasion of a legally protected interest" that is "concrete and particularized," i.e., which "'affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n.1 (citations omitted). To that end, and critically here, "[i]t is well settled that

- 6 -

defamatory words must refer to some ascertained or ascertainable person, and that that person *must be the particular plaintiff.*"  *Barlass v. City of Janesville*, No. 10-CV-454-SLC, 2011 WL 13187131, at *13 (W.D. Wis. Nov. 28, 2011) (emphasis added) (citing *Schoenfeld v. Journal Co.*, 235 N.W. 442, 444 (Wis. 1931), *aff'd sub nom. Barlass v. City of Janesville, Wis.*, 483 F. App'x 261 (7th Cir. 2012); W. Prosser, The Law of Torts § 111 (4th ed. 1971) (explaining "because tort action of defamation is personal to party defamed, person may not recover for defamatory statement made about another, even if statement indirectly inflicts some injury upon party seeking recovery")).  Courts thus routinely dismiss defamation claims brought by plaintiffs where the plaintiff was not the subject of the alleged false statement.[4]  Whether this requirement is viewed as one imposed by Article III or by Wisconsin's substantive defamation law, the result is the same: The Campaign's claim must be dismissed.

While corporate plaintiffs like the Campaign may, under certain circumstances, sue for defamation, Wisconsin courts have been firm "that the corporate form is not to be disregarded lightly,"[5] and "defamation claims by a company and its owners" are not "interchangeable." *Barlass*, 2011 WL 13187131, at *13.  Thus, in *Barlass*, where the person responsible for operating a bar brought suit for alleged defamatory statements about the bar itself, the court found she could "not meet her burden" to state a claim "because [the defendant's] comments were made about [the

---

[4] *See, e.g.*, *Wesbrook v. Ulrich*, No. 13-CV-494-WMC, 2014 WL 811786, at *7, 9 (W.D. Wis. Mar. 3, 2014) (granting motion to dismiss as alleged statements "could be false but … are not about the plaintiff," and "thus none of these statements support a defamation claim"); *Tannenbaum v. Foerster*, 648 F. Supp. 1300, 1303 (E.D. Wis. 1986) ("Count II must also be dismissed because Rachel Foerster Tannenbaum is not a plaintiff in this case and her husband does not have standing to litigate her claim.") (citing *Kassowitz v. Sentinel Co.*, 226 Wis. 4687 N.W. 177 (1938)), *aff'd*, 863 F.2d 885 (7th Cir. 1988).

[5] Indeed, as defendant WJFW-NBC's Memorandum notes, President Trump and the Campaign have made affirmative use of this corporate separateness in prior disputes.  ECF No. 9 at 11-12.

- 7 -

bar] and not [the plaintiff]." *Id.* at *12. The court observed that "the only ascertainable 'person' to which [defendant's] statement referred was [the bar itself], not [plaintiff]," and thus rejected the plaintiff's "conclusory assertion" that because "she was responsible for the operation of the bar … anyone hearing a reference to [the bar] would understand it to be a reference to [plaintiff] personally." *Id.* at *13. The plaintiff thus did not "have standing to bring a defamation claim" as she could not show a separate and distinct injury of her own. *Id.* at *1.

Consistent with this precedent, corporate claims are not typically permitted based on defamation of an agent. This is consistent with the general rule that "[a] corporation is not defamed by communications defamatory of its officers, agents or stockholders unless they also reflect discredit upon the method by which the corporation conducts its business." Restatement (Second) of Torts § 561 (1977); *see also, e.g.*, *Palm Springs Tennis Club v. Rangel*, 86 Cal. Rptr. 2d 73, 77 (1999) (finding corporation lacked standing where alleged false statements were "written not about the board as a whole or its ability to function adequately," but "[r]ather … about [the then-president and chairman], urging that he should not be re-elected, but should be replaced by a better candidate … because of *his* past behavior, not any conduct of [the corporation]"); *Eyal v. Helen Broad. Corp.*, 411 Mass. 426, 434 (1991) ("Whether a corporation's standing in the community was actually diminished is not relevant if the [statement] did not falsely charge the *corporation itself* with some kind of impropriety") (citations omitted). Thus, even if this Court were to find that a corporation could sustain a defamation claim under Wisconsin law, the Campaign could not do so here, where the advertisement in no way implicates the activity of the Campaign itself.

The challenged statements were attributed to the President, not the Campaign. Compl. ¶ 30. And while the Complaint alleges that the advertisement contains "statements represented to be made on behalf of the Trump Campaign," (*id.* ¶ 55), that is objectively untrue,

and the Court can disregard it based on the content of the advertisement itself, which is incorporated into the Complaint.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *Palm Springs*, 73 Cal. App. 4th at 6 ("[A]llegations … not sufficient to withstand demurrer when they contradict the unambiguous meaning of the flyer … incorporated into the complaint.") (citation omitted).

Indeed, Priorities' advertisement does not mention the Campaign's name, or refer to any conduct undertaken by the Campaign at all.  *See* Bradshaw Decl. (ECF No. 10) at Exs. F & G (ECF Nos. 10-6 & 10-7); Priorities USA, Exponential Threat, YouTube (Mar. 23, 2020) (https://bit.ly/2VGrEGB).  Its entire focus is the *President* and actions taken in his official capacity to respond to the coronavirus.  For example, it quotes statements in which the President characterizes the conduct of the *administration*, not the Campaign: "*We* have it totally under control," "*We* really think *we've done* a great job."  *Id.*  And it displays all quotes—including the challenged "hoax" statement—against the backdrop of a *prior* chronology that compares the current administration's response to the death toll over time.  *Id.*  There is nothing about the advertisement that implicates any actions undertaken, attributable to, or even "authorized" by the Campaign.  *Contra* Compl. ¶ 12 ("The purported statements of any authorized speaker alleged to have been made on behalf of the Trump Campaign impact the Trump Campaign.").

Because the challenged statements are personal to President Trump, he is the only proper plaintiff to bring a defamation claim based on those statements.  Whether viewed through the lens of Article III standing or the requirements of substantive defamation law, the Campaign's Complaint should be dismissed because the Campaign is not a proper plaintiff.

**B.     The Complaint Fails to State a Claim for Defamation Based on Priorities' Protected Political Speech.**

Lack of standing is not the only reason why this matter must be dismissed: even if that issue were to be resolved, the allegations in the Complaint fail to state a defamation claim as a matter of law.  The challenged advertisement is indisputably core protected First Amendment speech.  Counter-speech is the appropriate remedy under the First Amendment—not court-ordered silence.  That the Campaign might present an alternative interpretation of what the President meant when he made the statements reproduced in the advertisement does not make the advertisement false, much less actionable defamation.  The Complaint should thus be dismissed on this separate and independent ground.  *See* Fed. R. Civ. P. 12(b)(6).

**1.     Priorities' advertisement constitutes core First Amendment speech.**

The challenged advertisement, created and aired in the context of a presidential campaign, enjoys a heavy presumption of constitutional protection under the First Amendment, pursuant to well-established U.S. Supreme Court precedent.  Indeed, the Court has repeatedly held that "[t]he First Amendment 'has its fullest and most urgent application to speech uttered during a campaign for political office.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339-40 (2010) (quoting *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1939)); *Buckley v. Valeo*, 424 U.S. l, 14 (1976) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.") (per curiam).  "For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 340.

Imposing tort liability on Priorities in this case would be "incompatible with the atmosphere of free discussion contemplated by the First Amendment in the context of political campaigns." *Brown v. Hartlage*, 456 U.S. 45, 61 (1982).  Indeed, courts have repeatedly held that

- 10 -

the proper place to test the truth *vel non* of statements made during a political campaign is in the public debate that takes place in the context of the election cycle itself, not the courtroom.  As the Supreme Court explained in *Brown*, under the First Amendment, "we depend for . . . correction not on the conscience of judges and juries but on the competition of other ideas."  *Id.* (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)).  "In a political campaign, a candidate's factual blunder is unlikely to escape the notice of, and correction by, the erring candidate's political opponent."  *Id.*  In this context, "[t]he preferred First Amendment remedy of 'more speech, not enforced silence,' thus has special force."  *Id.* (quoting *Whitney v. Cal.*, 274 U.S. 357, 377 (1927)) (Brandeis, J., concurring).

That is precisely what happened here.  Immediately after the President made the statements that were later reproduced in the advertisement, many individuals and news organizations made public statements evidencing that they understood the President to have called the coronavirus pandemic a hoax or conspiracy—including several third-party statements recognized in the Complaint.  *See, e.g.*, Compl. ¶¶ 35-36 (Politico stated "'President Trump on Friday night tried to cast the global outbreak of the coronavirus as a liberal conspiracy intended to undermine his first term, lumping it alongside impeachment and the Mueller investigation'"); *id.* ¶ 38 (Mike Bloomberg stated "he 'f[ound] it incomprehensible that the President would do something as insane as calling it a hoax, which he did last night in South Carolina'"); *id.* ¶ 40 (Biden ad).  And the President and others responded to the same, presenting to the public their version of what the President meant.  *See* ECF No. 9 (WJFW-NBC Mem.) at 26 & n.10 (addressing President's clarification); Compl. ¶¶ 33-43. The First Amendment forecloses the Campaign's attempt to silence one side of this public debate through the courts.  *Brown*, 456 U.S. at 67.

2.      **The Trump Campaign cannot meet its burden to maintain this action.**

To succeed on a defamation claim, a plaintiff must demonstrate that the defendant was responsible for a statement that: "(1) was spoken to someone other than [it]self, (2) is false, (3) is unprivileged and (4) tends to harm [its] reputation so as to lower [it] in the estimation of the community or deter third persons from associating with [it]." *Barlass*, 2011 WL 13187131, at *12 (citation omitted). This is not easy in any case, but when a defamation claim is brought on the basis of statements about a public official like the President, the plaintiff faces an additional significant constitutional burden. *In re Storms v. Action Wis. Inc.*, 2008 WI 56, ¶ 38 (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1999); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Because of the critical importance of freedom of expression—particularly as it relates to matters of great public importance—"public figure[s] … cannot maintain a suit for defamation unless [they] can prove that the Defendants' acted with 'actual malice.'" *Madison v. Frazier*, 539 F.3d 646, 657–58 (7th Cir. 2008). There are innumerable flaws with the Campaign's claim that, should this case proceed, Priorities intends to address. At the pleading stage, however, it is immediately evident the Campaign cannot show that the statements in Priorities' advertisement were false or made with actual malice. Thus, the Complaint must be dismissed.

a.      **Falsity.**

"The sine qua non of recovery for defamation … is the existence of [a] falsehood." *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1974). In cases brought by a public official, it is the *plaintiff's* burden to prove the falsity of the challenged statement. *Torgerson*, 210 Wis. 2d 524, 543. "If the challenged statements as a whole are not capable of a false and defamatory meaning, or are substantially true, [the] action will fail." *Id.* at 534–35 (citation omitted). "Minor inaccuracies do not amount to falsity so long as the

substance, the gist, the sting, of the libelous charge be justified." *Masson*, 501 U.S. at 517; *see also Laughland v. Beckett*, 2015 WI App 70, ¶ 23. In this case, there is no doubt that the statements in Priorities' advertisement, and the gist of the President's message conveyed by those statements, are at the very least substantially true.

The Complaint is focused entirely on the first two quotes in the advertisement—"the coronavirus," and "this is their new hoax." Compl. ¶ 48. The Campaign concedes that the President said these things, in that order, within approximately one minute of each other in his South Carolina speech, (*id.* ¶ 25), but suggests that by not including every word within that entire minute, Priorities "create[d] a false message by manufacturing fake audio and using such fake audio to create a false, captioned quotation, in both cases to make it appear as though candidate Trump said the phrase 'The coronavirus, this is their new hoax'" (*id.* ¶ 30). According to the Campaign, this "manufactured" message is "false" because the President was "refer[ring] to his political opponents' characterization of his response to the coronavirus" as a "hoax"—not the coronavirus. *Id.* ¶¶ 25, 30.

The Complaint's charges of "fake audio" and "false captioned quotations" are verifiably untrue. Priorities' advertisement makes no false statements, and merely quotes the President's own words, playing the audio of his own voice, over a timeline of events beginning on January 20, running through the end of March, showing the number of coronavirus cases in the United States exponentially growing.[6] The advertisement does not assert that the President said the precise

---

[6] Likewise, there is no basis for the Complaint's allegation that, e.g., the advertisement "expresses that the Trump Campaign does not believe the coronavirus pandemic is real." Compl. ¶ 55. As noted, the advertisement says nothing about the Campaign (*see* Section IV.A, above), and it makes no independent statements regarding any such belief. In any event, even if the advertisement could be interpreted to express the type of opinion suggested by the Complaint, it would constitute the

sentence, "The coronavirus, this is their new hoax." Rather, the two statements are put on separate slides, and feature two obviously distinct audio clips that sound quite different. *See* ECF No. 10 (Bradshaw Decl.) at Exs. F & G; https://bit.ly/2VGrEGB.[7] Given this presentation, no reasonable person viewing the advertisement would understand the words, "the coronavirus" and "this is their new hoax," to have been spoken contiguously.

But even if they did, the Campaign's contention that the reproduction of the President's public statements is defamatory is without merit. The advertisement fairly conveys the "gist" of what the President said in his speech in South Carolina, where he asserted:

> Now the Democrats are politicizing the coronavirus. You know that, right? Coronavirus. They're politicizing it. We did one of the great jobs. You say, "How's President Trump doing?" They go, "Oh, not good, not good." They have no clue. They don't have any clue. They can't even count their votes in Iowa, they can't even count. No they can't. They can't count their votes.
>
> One of my people came up to me and said, Mr. President, they tried to beat you on Russia, Russia, Russia. That didn't work out too well. They couldn't do it. They tried the impeachment hoax. That was on a perfect conversation. They tried anything, they tried it over and over, they've been doing it since you got in. It's all turning, they lost, it's all turning. Think of it. Think of it. And this is their new hoax.

ECF No. 9 (WJFW-NBC Mem.) at 5; ECF No. 10-1 (Bradshaw Decl., Ex. A) at 5:20-7:1. Thus, although Priorities' advertisement does not include the President's digression into off-topic attacks on Democrats related to the Iowa caucus and the investigation into Russia's interference with the

---

type of straightforward political advocacy that lies at the core of the First Amendment's protections. *See, e.g.*, *Brown*, 456 U.S. at 67.

[7] Indeed, as Defendant WJFW-NBC's Memorandum observes, the audio used throughout the ad is taken from a number of different events. *See* ECF No. 9 at 3, n.2. This is also true of the two challenged phrases, with the first, "the coronavirus," coming from a press conference the President gave in New Delhi on February 25, 2020, and the second, "this is their new hoax," from South Carolina. The distinct audio, and the presentation of the phrases on separate slides, makes unmistakably clear that the advertisement is not quoting a single spoken sentence.

2016 election, it is clear that the President *was* talking about the coronavirus when he said "this is their new hoax" during his speech.

Moreover, the statements appeared in an advertisement that would have been immediately recognizable to its viewers as a political advertisement, presented in a brisk 30-seconds, and thus not understood to contain every word that the President has spoken on any subject, much less in the speeches that it excerpted. Viewed in its proper context and as a whole, it is simply not credible or sustainable to claim that the advertisement is defamatory. *See, e.g.*, *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶ 19 (finding statements are construed "in the plain and popular sense in which they would naturally be understood," and in the "context and circumstances in which the statements were made") (citations omitted); *Mach v. Allison*, 2003 WI App 11, ¶ 30 ("[W]e consider the broadcast as a whole, 'not in detached fragments.'") (citation omitted). The advertisement indisputably critiques the President's response to the emerging pandemic, juxtaposing his dismissive statements (e.g., "we have it totally under control;" "It's one person coming in from China") with the mounting number of coronavirus cases in the United States. Indeed, immediately following the statement quoted above from the South Carolina speech, the President continued to make statements plainly diminishing the coronavirus's significance:

> But you know we did something that's been pretty amazing. We have 15 people in this massive country and because of the fact that we went early, we went early, we could've had a lot more than that. We're doing great. Our country is doing so great. We are so unified.
>
> We are so unified. The Republican party has never ever been unified like it is now. There has never been a movement in the history of our country like we have now, never been a movement.
>
> So a statistic that we want to talk about … So, a number that nobody heard of that I heard of recently, and I was shocked to hear of it, 35,000 people on average die each year from the flu. Did anyone know that, 35,000? That's a lot of people. It can go to a hundred thousand, it can be 27,000. They say usually a minimum of

27[,000] it goes up to a hundred thousand people a year die, and so far we have lost nobody to Coronavirus in the United States. Nobody.

And it doesn't mean we won't, and we are totally prepared.  It doesn't mean we won't, but think of it.  You hear 35 and 40,000 people and we've lost nobody, and you wonder, the press is in hysteria mode, CNN, fake news ….

ECF No. 10 (Bradshaw Decl.), Ex. A at 7:2-8:13.

While the President may in hindsight regret having suggested that what exploded into a massive crisis was at the time under control, the fact remains that he repeatedly downplayed the seriousness of the pandemic and decried both criticism of his response to it and what would later prove to be prescient reporting about the virus's anticipated impact on the people of this country as "fake news."  It is thus no surprise that many news outlets and publications interpreted the President to have claimed that the outbreak and its significance was a hoax perpetuated by Democrats and the media—among them the sources discussed by the "fact-checkers" referenced in the Complaint.  *See* Section IV.B.1, above.[8]

That Priorities did not include every word that the President spoke in any or all of the speeches from which it reproduced audio in its 30-second political advertisement did not effect an actionable "material change" of the "gist" of the President's meaning. *See Masson*, 501 U.S. at 516 ("If an author alters a speaker's words but effects no material change in meaning … the speaker suffers no injury to reputation that is compensable as a defamation."); *id.* (finding circumstances such as "the practical necessity to edit and make intelligible a speakers' perhaps

---

[8] *See also, e.g.*, Ex. D to Complaint, Bethania Palma, "Did President Trump Refer to the Coronavirus as a 'Hoax'?" (Mar. 2, 2020) (ECF No. 1-2 at 35-44) (full version available at https://www.snopes.com/fact-check/trump-coronavirus-rally-remark/) (asking "Did President Trump Refer to the Coronavirus as a 'Hoax'," observing that during South Carolina speech he "muddied the waters" by comparing it to the flu, "downplay[ed] the scale of the virus and the danger it posed to the public," and "left many with the impression that he had referred to the virus itself as a 'hoax,'" stating that "[v]arious news media outlets and personalities reported that he did so …," citing tweets and articles by, for example, Dana Milbank, Politico, and NBC News.).

rambling comments, make it misleading to suggest that a quotation will be reconstructed with complete accuracy"); *see also*, *e.g.*, *Issa v. Applegate*, 31 Cal. App. 5th 689, 714 (Ct. App. 2019) (affirming dismissal of defamation case brought by U.S. Representative against challenger based on political advertisement that contained language presented in quotation marks that did not actually appear in the source quoted, finding plaintiff could not establish falsity where gist of statement was factually accurate); *Mitchum v. Capps*, Case No. 148704, slip op. granting motion to dismiss at 6 (Cal. Sup. Ct. 2015) (attached as Exhibit A to the concurrently filed Declaration of Brandon M. Lewis) (dismissing congressional candidate's defamation case alleging that advertisement played his public statements out of context; where "[t]he only alleged alteration of [the candidate's] statement was the presentation of an incomplete sentence he uttered" which did not materially change the meaning, claim for defamation was not actionable).[9]

In this case, the advertisement did not materially alter the President's statements, nor did it effect a material change in the meaning of the same. Instead, the advertisement presented accurate audio clips of the President speaking, and the advertisement as a whole accurately communicated the President's minimization of the pandemic threat. As such, the statements at issue did not contain any provably false assertions of fact as required to support a claim for defamation. Because the Campaign's Complaint does not and cannot plausibly allege the essential element of falsity, the defamation claim should be dismissed. *See, e.g.*, *Brokers' Choice*, 138 F. Supp. at 1199

---

[9] For the same reasons, the Complaint's quibble over punctuation in the advertisement's subtitles is a non-starter. *See, e.g.*, Compl. ¶ 62. As noted, the words themselves appear as they were stated by the President. *See id.* ¶ 30. The words thus obviously also convey the "gist" of those statements, and the Campaign cannot meet its burden of producing evidence that the advertisement was false if it conveys the "substance, the gist, the sting" of the President's message. *Masson*, 501 U.S. at 517.

(finding "motion to dismiss can be granted on the basis that the challenged publication was substantially true") (citations omitted).

### b.   Actual Malice.

"A public figure plaintiff may hold a speaker liable for the damage to reputation caused by publication of defamatory statements only if he establishes actual malice …," *i.e.*, that the statement was made "with knowledge of its falsity," or "despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Madison*, 539 F.3d at 657-58 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Chi. Dist. Counsel of Carpenters Pension Fund. v. Reinke Insulation Co.*, 464 F.3d 651, 655 (7th Cir. 2006); *Piersall v. SportsVision of Chi.*, 595 N.E.2d 103, 105 (1992)).  The inquiry is subjective and the public figure plaintiff must carry his burden by clear and convincing evidence.  *Madison*, 539 F.3d at 658 (citations omitted).  Moreover, "while [s]tates of mind may be pleaded generally … a plaintiff still must point to details sufficient to render a claim plausible." *Pippen*, 734 F.3d at 614 (affirming district court conclusion that "complaint did not plausibly allege that the defendants had published the falsehoods with actual malice") (citing *Bell Atl.*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

Here, the Complaint vaguely alleges malice based on: (a) the Campaign's opinion that the President was referring to the politicization of the coronavirus, not the virus itself or its seriousness, as the "hoax" (Compl. ¶ 63); (b) notice that the advertisement was "deemed false" by some "independent fact-checkers" (*id.* ¶¶ 69-71); and (c) notice to the station of the Campaign's opinion that the advertisement was false via a cease and desist letter (*id.* ¶¶ 70, 72).  These allegations, which are all premised on the "falsity" of Priorities' advertisement, and if anything suggest that

the President's statements were in fact fairly subject to different interpretations, fall woefully short of stating a "plausible claim" for actual malice, and cannot do so as a matter of law.

In *Masson v. New Yorker Magazine*, the U.S. Supreme Court set forth the standard of "actual malice" as it applies to defamation claims based on alleged alterations of a public official's statements. The Court held that the "deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity . . . unless the alteration results in a material change in the meaning conveyed by the statement." 501 U.S. at 517 (citations omitted). Based on this, courts have ruled that "a defamatory quotation is not necessarily actionable simply because it is not an exact reproduction (or even if it is a deliberate alteration) of the subject's statement." *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 120 (E.D.N.Y. 1997). "Rather, the alteration must 'result in a material change in the meaning conveyed,' and the difference must potentially injure the subject's reputation." *Id.* (quoting *Masson*, 501 U.S. at 517).

First, applying the *Masson* standard, the Campaign cannot establish actual malice because Priorities' advertisement provided a "substantially true" account of the President's remarks that did not "materially change" his meaning. As discussed previously, the clear import of the President's statements were to downplay the overall significance of the coronavirus pandemic. *See* Section IV.B.2.a, above. Priorities captured this substance in its quotation of the President's remarks, and its advertisement considered in context and as a whole did not attribute to him words he did not use or describe his words contrary to their actual meaning.

The "substantial truth" of Priorities' quotation of the President is further demonstrated when contrasted with the statements found to be actionable in *Masson*. That case involved an article about a noted psychoanalyst, Jeffrey Masson, which contained several misleading and fabricated quotations from an interview Masson gave. For example, the article quoted Masson as

saying that he wanted to turn an academic archive into a place of "sex, women, and fun," which he never said. 501 U.S. at 523. It claimed that Masson "crowed" that his book would cause other analysts to praise him as "after Freud, … the greatest analyst who ever lived," when Masson actually said "there is not an analyst in the country who will say a single word in favor of it." *Id.* at 506. Because the article attributed to Masson words he never used and contradicted his recorded statements, the Court held that the author of the article "materially changed" the meaning of his actual statements and therefore that a jury could find that the quotations were not "substantially true." That is a far cry from the exact quotations of the President used in Priorities' advertisement here.

Second, to the extent there is any doubt regarding exactly what the President called a "hoax," his statements were at best ambiguous, and Priorities' choice to publish one reasonable interpretation of those ambiguous statements is insufficient to show malice as a matter of law. *See Storms*, 2008 WI 56. This issue is appropriately resolved here, as "the determination of whether there is a single reasonable interpretation of the speech or whether the speech is ambiguous is a question of law." *Id.* ¶ 46 (discussing *Torgerson*, 210 Wis. 2d at 545-46, which found that "defendant's characterization of … letters was 'a rational interpretation of ambiguous statements contained in those letters,' and 'the deliberate choice of that interpretation over another interpretation could not constitute evidence of actual malice, even if the interpretation was provably false."). Indeed, in *Storms*, the Wisconsin Supreme Court upheld a decision that a defamation claim was brought *frivolously* when the "cornerstone" of plaintiff's malice theory was its (incorrect) view that, "based on his review of the speech," it was "inconceivable" that defendant interpreted it in the manner that was published, which "interpretation … [wa]s [allegedly] the result of selecting sentences from the speech and cobbling them together to support its conclusion." 2008

WI 56 ¶¶ 42-44.  The court disagreed, noting that "[w]hile [it] d[id] not doubt that [plaintiff's] is a reasonable interpretation, we cannot agree that it is the only reasonable interpretation," which was "no less selective" and "simply emphasized different passages."  *Id.* ¶ 47.  As both interpretations were reasonable, "the speech [wa]s ambiguous."  *Id.* ¶ 46.  And because "actual malice cannot be inferred from the choice of one rational interpretation over another," then "[a]s a matter of law, th[e] [defendant's] choice d[id] not demonstrate actual malice."  *Id.* ¶¶ 57-60.

Likewise here, to the extent the Campaign's alternative interpretation of the President's remarks is reasonable, it certainly does not make Priorities' interpretation unreasonable.  This is evident not only from the text of the speech itself, but also the myriad third parties who independently came to the same interpretation *before* Priorities' advertisement was aired.  *See* Sections IV.B.1, 2.a.  The challenged statements would thus at best be ambiguous, and Priorities' choice of one rational interpretation cannot, as a matter of law, demonstrate the actual malice necessary to sustain the Campaign's claim.[10]  On this basis as well, the Complaint should be dismissed.

Finally, it bears emphasis that these statements were made during a political campaign, a context that is crucial for properly interpreting their meaning.  Numerous courts have held that "it is in part the *settings* of the speech in question that makes their hyperbolic nature apparent, and which helps determine the way in which the intended audience will receive them."  *Moldea v. New*

---

[10] The Campaign's remaining malice allegations, regarding "notice" from third-parties and the Campaign of divergent opinions about the advertisement's truth, are also insufficient as a matter of law.  *See, e.g.*, *Storms*, 2008 WI 56 ¶¶ 64-65 (rejecting allegation that defendant's failure to "respond to retraction requests [was] evidence of actual malice," which was "contrary to [the Wisconsin Supreme] [C]ourt's decision … that the repeated publication of a statement after being informed that the statement was false did not constitute actual malice so long as the speaker believed it to be true") (citing *Van Straten v. Milwaukee Journal Newspaper–Publisher*, 151 Wis. 2d 905, 917-18, 447 N.W.2d 105 (Ct. App. 1989)).

*York Times Co.*, 22 F.3d 310, 314 (D.C. Cir. 1994) (citing *Letter Carriers*, 418 U.S. at 286; *Masson*, 501 U.S. at 511-13).  This is particularly true in the context of a political campaign, a "setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, [and where] language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (Cal. 1976).  As the U.S. Supreme Court has emphasized:

> This value must be protected with special vigilance.  When a candidate enters the political arena, he or she "must expect that the debate will sometimes be rough and personal," ... and cannot "'cry Foul!' when an opponent or an industrious reporter attempts to demonstrate" that he or she lacks the "sterling integrity" trumpeted in campaign literature and speeches. Vigorous reportage of political campaigns is necessary for the optimal functioning of democratic institutions and central to our history of individual liberty."

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686–87 (1989) (quoting *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 274 (1971)).  In a presidential campaign, it can hardly be disputed that Priorities' advertisement was of the "kind typically generated in a spirited dispute in which the loyalties and subjective motives of rivals are attacked and defended," not the knowing misrepresentations of fact that could support a claim for defamation.  *Desert Sun Publ'g Co. v. Superior Court*, 158 Cal. Rptr. 519, 522 (Ct. App. 1979).

## V.    Conclusion

Plaintiff's Complaint attempts to shield the real party in interest from litigation, while that party nonetheless seeks redress from the courts, to suppress Priorities' right to free speech by challenging an advertisement that accurately quotes the President's own words.  The Complaint should be dismissed, with prejudice.

Dated:  May 12, 2020

Respectfully submitted,

s/ *Marc E. Elias*

PERKINS COIE LLP

David L. Anstaett, SBN 1037884
DAnstaett@perkinscoie.com
Brandon M Lewis, SBN 1086824
BLewis@perkinscoie.com
Sopen B. Shah, SBN 1105013
SShah@perkinscoie.com
33 East Main Street, Suite 201
Madison, WI  53703
Phone: 608.663.7460
Facsimile:  608.663.7499

Marc E. Elias
MElias@perkinscoie.com
Ezra W. Reese (*pro hac vice pending*)
Ereese@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, DC 20005-3960
Phone:  202.654.6200
Facsimile: 202.654.6211

Gillian Kuhlmann (*pro hac vice pending*)
GKuhlmann@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Phone:  310.788.9900
Facsimile:  310.788.3399

*Attorneys for Proposed Intervenor-Defendant
Priorities USA Action*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2020, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, by electronic service via the Court's transmission facilities.

Dated:  May 12, 2020

Respectfully submitted,

s/ *Marc E. Elias*

PERKINS COIE LLP

David L. Anstaett
DAnstaett@perkinscoie.com
Brandon M Lewis
BLewis@perkinscoie.com
Sopen B. Shah
SShah@perkinscoie.com
33 East Main Street, Suite 201
Madison, WI  53703
Phone: 608.663.7460
Facsimile:  608.663.7499

Marc E. Elias
MElias@perkinscoie.com
Ezra W. Reese (*pro hac vice pending*)
Ereese@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, DC 20005-3960
Phone:  202.654.6200
Facsimile: 202.654.6211

Gillian Kuhlmann (*pro hac vice pending*)
GKuhlmann@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Phone:  310.788.9900
Facsimile:  310.788.3399

*Attorneys for Proposed Intervenor-Defendant*
*Priorities USA Action*