**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **DONALD J. TRUMP FOR PRESIDENT, INC.,**<br><br>　　　　　　**Plaintiff,**<br><br>　　**vs.**<br><br>**NORTHLAND TELEVISION, LLC d/b/a WJFW-NBC,**<br><br>　　　　　　**Defendant.** | **Civil No.: 3:20-cv-00385-wmc** |

**DEFENDANT'S MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ................................................................................................................4

I.      Domicile is a Totality of Circumstances Analysis.................................................4

II.     All of the Individuals in WJFW's Ownership Structure are Domiciled in
        Florida and California .........................................................................................8

        A.      Randall Smith is Domiciled in Florida ......................................................9

        B.      R. Joseph Fuchs is Domiciled in Florida ................................................12

        C.      Mary Smith is Domiciled in California ...................................................15

CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*,
  2008 U.S. Dist. LEXIS 84374 (N.D. Ill. Oct. 21, 2008)....................................................10, 12

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976)..........................................................................................................1

*Craig v. Ontario Corp.*,
  543 F.3d 872 (7th Cir. 2008) ..........................................................................................9, 13

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014)..............................................................................................................2

*Donald J. Trump for President, Inc. v. Northland Television, LLC*,
  2020 U.S. Dist. LEXIS 86648 (W.D. Wis. May 18, 2020) ..................................................1, 4

*Dos Anjos v. Teverow*,
  2019 U.S. Dist. LEXIS 108370 (D. Mass. June 27, 2019) ..................................................7, 8

*Eberle v. Overdrive, Inc.*,
  2019 U.S. Dist. LEXIS 166103 (W.D. Wis. Sept. 27, 2019)..................................................7

*Eliason v. Molgaard*,
  2016 U.S. Dist. LEXIS 75742 (W.D. Wis. June 9, 2016) ................................................4, 5, 6

*First State Insurance Co. v. Callan Associates*,
  113 F.3d 161 (9th Cir. 1997) ..............................................................................................1

*Galva Foundry Co. v. Heiden*,
  924 F.2d 729 (7th Cir. 1991) ............................................................................... 4, *passim*

*Garcia v. Andonie*,
  101 So. 3d 339 (Fla. 2012)............................................................................................9, 13

*Larchmont Holdings, LLC v. North Shore Holdings, LLC*,
  2017 U.S. Dist. LEXIS 6637 (W.D. Wis. Jan. 13, 2017) .......................................... 5, *passim*

*Lundquist v. Precision Valley Aviation, Inc.*,
  946 F.2d 8 (1st Cir. 1991)..............................................................................................10, 14

*Midwest Transit, Inc. v. Hicks*,
    79 F. App'x 205 (7th Cir. 2003) .....................................................................4, 5, 7

*Mississippi Band of Choctaw Indians v. Holyfield*,
    490 U.S. 30 (1989)...........................................................................................5

*Newell v. O & K Steel Corp.*,
    42 F. App'x 830 (7th Cir. 2002) ...................................................................6, 11

*O'Neal v. Atwal*,
    425 F. Supp. 2d 944 (W.D. Wis. 2006) .............................................................5

*Paragon Tank Truck Equipment LLC v. Parish Truck Sales, Inc.*,
    2014 U.S. Dist. LEXIS 21033 (W.D. Wis. Feb. 20, 2014).....................................2

*Perry v. Pogemiller*,
    146 F.R.D. 164 (N.D. Ill. 1992)...................................................................5, 14

*RGT Holdings, Inc. v. Harmon*,
    2017 U.S. Dist. LEXIS 35226 (N.D. Ill. Mar. 13, 2017)............................ 1, *passim*

*Rubin v. Hirschfeld*,
    2002 U.S. Dist. LEXIS 27387 (D. Conn. Mar. 20, 2002).......................................8

*Schiavone v. Donovan*,
    2009 U.S. Dist. LEXIS 85253 (D.N.J. Sept. 14, 2009) ......................................7, 9

*Stoller v. Walworth County*,
    770 F. App'x 762 (7th Cir. 2019) .....................................................................5

*Thomas v. Guardsmark, LLC*,
    487 F.3d 531 (7th Cir. 2007) ...........................................................................2

*Turicchi v. Quaid*,
    2019 U.S. Dist. LEXIS 71082 (C.D. Cal. Apr. 25, 2019) .......................................7

**Other Authorities**

Maggie Haberman, *Trump, Lifelong New Yorker, Declares Himself a Resident of
    Florida*, N.Y. Times (Oct. 31, 2019) .................................................................11

15 Moore's Federal Practice § 102.36 (3d ed.).......................................................10, 13

Defendant Northland Television, LLC d/b/a WJFW-NBC ("WJFW"), by its undersigned counsel, hereby files this opposition to the motion to remand filed by Plaintiff Donald J. Trump for President, Inc. (the "Trump Campaign Committee" or "Committee").

## **INTRODUCTION**

The Trump Campaign Committee has no grounds at all to challenge the right of WJFW, a clearly diverse party, to the federal forum.  As the Court noted, the Committee's motion to remand presents far from "definitive evidence" about the domicile of the three principals in WJFW's ownership structure.  *Donald J. Trump for President, Inc. v. Northland Television, LLC*, 2020 U.S. Dist. LEXIS 86648, at *5 (W.D. Wis. May 18, 2020).  Rather, the Committee's motion "cobble[s] together a hodge-podge of minor contacts that in no way contradict[s]" the representations that WJFW made in its notice of removal.  *RGT Holdings, Inc. v. Harmon*, 2017 U.S. Dist. LEXIS 35226, at *13-15 (N.D. Ill. Mar. 13, 2017) (that defendant "still ha[d] some connection" to Illinois did "not undermine his claim to Texas citizenship").

Indeed, as the declarations submitted with this opposition conclusively demonstrate, the claims of domicile made by WJFW's principals—R. Joseph Fuchs (to Florida), Randall D. Smith (to Florida) and Mary Smith (to California)—are genuine and borne out by a wealth of evidence. Each of them has longstanding, broad, and deep connections to their home state.  This is not a close case: WJFW is indisputably diverse from the Committee, a citizen of Virginia and New York.

In cases of diversity jurisdiction, no less than in any other context, the federal courts have the "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see, e.g.*, *First State Ins.*

1

*Co. v. Callan Assocs.*, 113 F.3d 161, 163 (9th Cir. 1997).  Because that jurisdiction clearly exists here, this Court should deny the Committee's motion to remand.

## BACKGROUND

The Committee filed this action in the Circuit Court for Price County on April 13, 2020, and served WJFW with the Complaint on April 15.  *See* Notice of Removal ¶¶ 1-2, Dkt. 1. WJFW timely removed the lawsuit to this Court on April 27, 2020.  *See id.* ¶¶ 2-3.  As required, WJFW set out the basis for diversity jurisdiction under 28 U.S.C. § 1332(a), alleging both the amount in controversy and the complete citizenship of the parties.  *Id.* ¶¶ 8-22; *see, e.g.*, *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (noting that "an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well"); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014) ("To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'") (quoting 28 U. S. C. §1446(a)); *Paragon Tank Truck Equip. LLC v. Parish Truck Sales, Inc.*, 2014 U.S. Dist. LEXIS 21033, at *2-4 (W.D. Wis. Feb. 20, 2014) (pleading that "*alleges* complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000" is sufficient) (emphasis added).

WJFW is a limited liability company with one member, Rockfleet Broadcasting, L.P. Notice of Removal ¶ 9.  That entity, as WJFW explained, is a limited partnership with three partners: Rockfleet Broadcasting, Inc., R. Joseph Fuchs, and SDR-Rockfleet Holdings, LLC ("SDR").  *Id.*  SDR, in turn, has two individual members: Randall D. Smith and Mary Smith.  *Id.*

2

This means that WJFW is a citizen of three states: Delaware (where Rockfleet Broadcasting, Inc. is incorporated), Florida (where Mr. Fuchs and Mr. Smith are domiciled, and where Rockfleet Broadcasting, Inc. has its principal place of business) and California (where Ms. Smith is domiciled). *Id.* ¶¶ 10-15.  WJFW is therefore completely diverse from the Committee, which is a citizen of Virginia (where it is incorporated) and New York (where it has its principal place of business). *Id.* ¶¶ 8, 15.

The Committee filed its motion to remand this case on May 7, 2020, just hours after WJFW filed its motion to dismiss the action pursuant to Federal Rule 12(b)(6).  *See* Mot. to Dismiss, Dkt. 8; Mot. to Remand, Dkt. 13.  In seeking to remand this case, the Committee does not contest that the amount-in-controversy requirement is satisfied, nor does it contest the citizenship of Rockfleet Broadcasting, Inc.  Instead, it contests the domicile of the three individuals in WJFW's ownership structure, citing either a handful of selectively compiled facts and a Wikipedia entry (as to Mr. Fuchs and Mr. Smith) or no facts at all (as to Ms. Smith).  *See* Br. in Supp. of Mot. to Remand ("Remand Br.") at 8-11, Dkt. 14.  The Committee's challenge is at variance with the actual facts about these three diverse individuals.

In addition to its misguided decision to contest the Court's jurisdiction, the Trump Campaign Committee sought to forestall confronting the grave constitutional infirmities in its complaint.  On May 11, 2020, four days after moving to remand this case, the Committee filed an "emergency" motion to stay proceedings on WJFW's motion to dismiss pending resolution of the jurisdictional issue it raised.  *See* Emergency Mot. to Stay, Dkt. 17.  Citing "the chilling effect on free speech that can result from drawn-out libel suits," this Court denied the Committee's request and ordered briefing on the 12(b)(6) motion to proceed as scheduled.

3

*Donald J. Trump for President, Inc.*, 2020 U.S. Dist. LEXIS 86648, at *4 (citing *Grzelak v. Calumet Publ'g Co.*, 543 F.2d 579, 582 (7th Cir. 1975)).

Having failed to stall this case, the Committee now must face the jurisdictional issue it raised and, simultaneously, the merits motion it hoped to avoid.

## **ARGUMENT**

As the declarations and documentary evidence submitted here show, WJFW's principals properly claimed domicile in Florida and California. Each of the principals—Joseph Fuchs, Randall D. Smith, and Mary Smith—has established a number of deep connections to their home state and evinced an intent to make it their permanent home. Each of their changes in domicile preceded this lawsuit by the better part of a decade or more. Each of them lives in their home state with their spouse, is registered to vote in their home state, has a driver's license and vehicle registration in their home state, uses the services of professionals in their home state, and treats their home state as their place of residency for tax purposes. There can be no genuine dispute about the legitimacy of their claims of domicile.

### **I. Domicile is a Totality of Circumstances Analysis**

For purposes of diversity jurisdiction, a natural person is considered a citizen of their state of "domicile"—the place where the person "intends to live over the long run" and "considers [their] permanent home." *Eliason v. Molgaard*, 2016 U.S. Dist. LEXIS 75742, at *9 (W.D. Wis. June 9, 2016) (quoting *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (internal marks omitted)); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). Domicile has two elements: "(1) physical presence or residence in a state and (2) an intent to remain in the state." *Midwest Transit, Inc. v. Hicks*, 79 F. App'x 205, 208 (7th Cir.

2003); *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). Domicile is not synonymous with mere residence; "a person may have several residences, but only one domicile." *Eliason*, 2016 U.S. Dist. LEXIS 75742, at *9 (citing *Heinen*, 671 F.3d at 670); *Stoller v. Walworth Cty.*, 770 F. App'x 762, 765 (7th Cir. 2019).

Where individuals have "second or even third residences in different states," courts assess their domicile with reference to a series of factors, including "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Midwest Transit, Inc.*, 79 F. App'x at 208 (citing, *inter alia*, *Galva Foundry Co.*, 924 F.2d at 730); *see also O'Neal v. Atwal*, 425 F. Supp. 2d 944, 947 (W.D. Wis. 2006) (courts look to "where the individual is employed and registered to vote; where he pays taxes; the location of his bank accounts, personal property and any land he owns; and whether the individual belongs to any clubs or organizations") (citing 15 Moore's Federal Practice § 102.36[1] (3d ed.)); *Perry v. Pogemiller*, 146 F.R.D. 164, 167 (N.D. Ill. 1992) (noting that courts also look to "the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc."), *aff'd*, 16 F.3d 138 (7th Cir. 1993). Unless inconsistent with these indicia, an individual's own statement of intent is also entitled to weight. *See, e.g.*, *Midwest Transit, Inc.*, 79 F. App'x at 209 (vacating district court's dismissal for lack of subject matter jurisdiction and remanding "so that the court may properly consider [defendant's] statements of intent regarding his citizenship"); *Larchmont Holdings, LLC v. N. Shore Holdings, LLC*, 2017 U.S. Dist. LEXIS

6637, at *16 (W.D. Wis. Jan. 13, 2017) (finding evidence consistent with individuals' "stated intent of making Florida their permanent homes").

The court's conclusion is based on "the totality of the circumstances." *Newell v. O & K Steel Corp.*, 42 F. App'x 830, 833 (7th Cir. 2002). "The existence of one or more of [the] factors may weigh in favor of a finding of citizenship, but no single factor is conclusive." *Larchmont Holdings*, 2017 U.S. Dist. LEXIS 6637, at *14-15 (quoting *Midwest Transit, Inc.*, 79 F. App'x at 208 (internal marks omitted)). The ultimate question, decided on the preponderance of the evidence, is where "the center of gravity" of an individual's life is located. *Galva Foundry Co.*, 924 F.2d at 730; *Eliason*, 2016 U.S. Dist. LEXIS 75742, at *8.

This Court's 2017 decision in *Larchmont Holdings* is instructive. In that case, the defendants challenged the plaintiff LLC's assertion of diversity jurisdiction, alleging that its members were domiciled in Wisconsin, the same as defendants' domicile, rather than Florida, as the plaintiff had claimed. 2017 U.S. Dist. LEXIS 6637, at *1. Based on declarations and testimony at an evidentiary hearing, the Court concluded that all of the plaintiff's members were domiciled in Florida. It found that two of the plaintiff's members "reside and conduct their daily affairs primarily in Florida," and that their properties in Wisconsin were vacation homes. *Id.* at *15. The Court also held that two other members were domiciled in Florida, despite the fact that they had been "long-term residents of Wisconsin," "continued to work, own property, and maintain business interests in Wisconsin," and spent about half their time there. *Id.* at *15-19. The Court concluded that meaningful, objective indicators of domicile—including the place of

6

their families, their voter registrations, and their use of professional services—showed that their

lives were "centered in Florida." *Id.*[1]

Where an individual has changed their domicile, the analysis focuses on the genuineness

of that change rather than the individual's motives for it. *See, e.g.*, *Midwest Transit, Inc.*, 79 F.

App'x at 209 ("[defendant's] motive in moving to Florida is irrelevant as long as his intent to

change his domicile is 'bona fide'") (quoting *Dakuras v. Edwards*, 312 F.3d 256, 259 (7th Cir.

2002)); *Schiavone v. Donovan*, 2009 U.S. Dist. LEXIS 85253, at *10 (D.N.J. Sept. 14, 2009)

(rejecting plaintiff's argument, holding that "motive in changing domicile is irrelevant for

purposes of diversity jurisdiction" unless it reflects inconsistency in evidence).

*Galva Foundry*, which the Trump Campaign Committee heavily relies on, *see* Remand

Br. at 7-8, actually makes WJFW's point.  924 F.2d 729.  There, the Seventh Circuit upheld the

district judge's conclusion that the defendant was domiciled in Illinois rather than Florida.  As

Judge Posner explained, the defendant's claim of residency in Florida for tax purposes and other

ostensible ties to the state created an "aura of fraud," because he "intended no change in the

manner or style of his life" and continued to make Illinois the "center of gravity" of his life.  *Id.*

at 730-31.  *See also Dos Anjos v. Teverow*, 2019 U.S. Dist. LEXIS 108370, at *7-8 (D. Mass.

June 27, 2019) (noting that *Galva Foundry* was a case where "the defendant 'changed' his

residence by effectively lying to tax authorities to avoid a substantial tax burden arising from the

---

[1] Unlike in *Larchmont*, where the Court conducted an evidentiary hearing before finding
jurisdiction, here the evidence of domicile is overwhelming, incapable of genuine dispute, and is
thoroughly supported by documentary evidence.  *Compare, e.g.*, *Eberle v. Overdrive, Inc.*, 2019
U.S. Dist. LEXIS 166103, at *8 (W.D. Wis. Sept. 27, 2019) (ordering evidentiary hearing where
plaintiff's own "conflicting representations create[d] a genuine dispute" as to his domicile), *with*
*Turicchi v. Quaid*, 2019 U.S. Dist. LEXIS 71082, at *9 (C.D. Cal. Apr. 25, 2019) (denying

sale of his business while actually continuing to spend the majority of his time in his original domicile"). *Galva Foundry* stands in sharp contrast to diversity cases where—as here—the record before the court made clear that the parties had genuinely centered their lives around the state of claimed domicile. *See, e.g.*, *Dos Anjos*, 2019 U.S. Dist. LEXIS 108370, at *8 (dismissing plaintiff's allegation that defendant was domiciled in Rhode Island, noting that "[t]here simply is evidence of a life in Rhode Island followed by a gradual move to Florida with an effort to change domicile to Florida without cutting all ties to Rhode Island"); *RGT Holdings, Inc.*, 2017 U.S. Dist. LEXIS 35226, at *17 (rejecting suggestion that defendant merely moved to Texas "to evade Illinois income tax or to receive in-state tuition for his son," because unlike in *Galva Foundry*, defendant "changed his residency long-term, without any sudden change in financial circumstances, and radically altered the style of his life"); *Rubin v. Hirschfeld*, 2002 U.S. Dist. LEXIS 27387, at *8-9 (D. Conn. Mar. 20, 2002) (rejecting claim that defendant's "ties to Florida [were] an arrangement for purposes of obtaining favorable tax consequences," and finding defendant to be domiciled in Florida because his "ties to Florida precede the complaint by a decade, he spends 50% of the year there and his ties to the state are more than the superficial ones presented in *Galva Foundry Co.*").

## II. All of the Individuals in WJFW's Ownership Structure are Domiciled in Florida and California

The declarations and supporting documents submitted here leave no room for doubt that Mr. Smith and Mr. Fuchs are domiciled in Florida, and that Ms. Smith is domiciled in California.

---

request for evidentiary hearing and jurisdictional discovery because plaintiffs "failed to create a factual dispute [as to defendants' domicile] with admissible evidence").

A. Randall Smith is Domiciled in Florida

The Committee's assertion that Mr. Smith is domiciled in New York rests on the fact that he owns property there, has business ties to the state, and uses a New York address for certain administrative purposes. However, the evidence that Mr. Smith has long been domiciled in Florida is both overwhelming and irrefutable.

As Mr. Smith explains in his declaration, he has been domiciled in Florida since 2011. Decl. of Randall D. Smith ("R. Smith Decl.") ¶ 3. He and his wife Barbara moved to the state in January 2011 because they "thought the warmer climate and outdoor activities would contribute to a healthier lifestyle," and "Palm Beach was a location [they] wanted to enjoy together in [their] latter years." *Id*. Mr. Smith's primary residence is a house in Palm Beach, and since moving to Florida he has spent more than seven months of each year there. *Id.* ¶ 4; *see, e.g.*, *Galva Foundry*, 924 F.2d at 730 (emphasizing that defendant "spen[t] the greater part of the year [in Illinois] rather than in Florida"); *RGT Holdings, Inc.*, 2017 U.S. Dist. LEXIS 35226, at *5 (finding defendant who spent "'at least 60% of the time' that he [was] not traveling for business in Texas" to be domiciled there). Mr. Smith has long claimed the homestead exemption for his Palm Beach home, which under Florida law can be applied only to the "permanent residence" of the owner or a dependent of the owner. *See* R. Smith Decl. ¶ 5 & Ex. A; *Garcia v. Andonie*, 101 So. 3d 339, 347 (Fla. 2012) (noting that statute defines permanent residence as "place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning") (quoting Fla. Stat. § 196.012(18)); *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008) (for diversity purposes, plaintiffs' receipt of homestead tax credit in Indiana suggested they were citizens of the state); *Schiavone*,

2009 U.S. Dist. LEXIS 85253, at *8 (the fact that defendant "received a tax [exemption] for permanent residents of Florida" supported his claim of domicile there).  Since 2011, moreover, Mr. Smith has insured his Palm Beach home as his primary residence.  R. Smith Decl. ¶ 6 & Ex. B; *see, e.g.*, *Larchmont Holdings, LLC*, 2017 U.S. Dist. LEXIS 6637, at *5, *9 (noting that members of plaintiff LLC insured Florida homes as primary residences).

The declaration and documents speak to Mr. Smith's other objective manifestations of intent to make Florida his permanent home.  Barbara, his wife, moved to Florida with him, spends the bulk of her time there, and manages a residential rental business in Palm Beach.  R. Smith Decl. ¶ 9; *see 24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, 2008 U.S. Dist. LEXIS 84374, at *14-15 (N.D. Ill. Oct. 21, 2008) ("Central to [the] 'center of gravity' analysis is the location of an individual's family—particularly his spouse and children."); *accord Larchmont Holdings, LLC*, 2017 U.S. Dist. LEXIS 6637, at *17.  Mr. Smith has been registered to vote in Florida since 2011 (as has his wife, since 2008) and has cast his ballot in multiple U.S. presidential elections there.  R. Smith Decl. ¶¶ 11-12 & Exs. C & D; *see Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) (treating place of voter registration and actual voting as "weighty" factors in domicile analysis); *see also* 15 Moore's Federal Practice § 102.36[3] ("The place where a person votes is a factor that perhaps carries more weight than other factors.").  He and Barbara each have a Florida driver's license that bear the address of their Palm Beach home, and both vehicles he uses are registered in Florida.  R. Smith Decl. ¶¶ 13-15 & Exs. E-H; *see, e.g.*, *RGT Holdings, Inc.*, 2017 U.S. Dist. LEXIS 35226, at *14 (fact that defendant "ha[d] a Texas driver's licenses and ha[d] vehicles registered in Texas" pointed to domicile in Texas).  Since 2011, Mr. Smith has filed a non-resident tax return with the state of

10

New York for any income earned there.  R. Smith Decl. ¶ 16 & Ex. I; *Newell*, 42 F. App'x at 833 (listing "payment of taxes" as factor in domicile analysis).  And he has, for many years, been a member of several social clubs based in Palm Beach and West Palm Beach.  R. Smith Decl. ¶ 22; *Larchmont Holdings, LLC*, 2017 U.S. Dist. LEXIS 6637, *14 ("whether the individual belongs to any clubs or organizations in a particular state" is part of domicile analysis).

None of the evidence the Committee presents raises even a serious question about Mr. Smith's genuine place of domicile.  The Committee points to Mr. Smith's ownership of property in Southampton, New York and New York City.  Remand Br. at 9.  As his declaration explains, however, Mr. Smith uses his property in Southampton as his summer residence only, and he stays for brief periods in his Manhattan apartment when he visits the city on short trips four to five times a year.  R. Smith Decl. ¶¶ 18, 19.  The Committee also claims Mr. Smith must be domiciled in New York because he founded a hedge fund, Alden Global Capital, based in New York City and worked in the state of New York "for many years."  Remand Br. at 9-10.  Not so. As Mr. Smith explains, he has discharged his duties as Chief of Investments at Alden "largely remotely from [his] Palm Beach home" since he moved to Florida in 2011, and he travels to New York City for meetings and in-person events only a few times a year.  R. Smith Decl. ¶ 18; *Larchmont Holdings, LLC*, 2017 U.S. Dist. LEXIS 6637, at *18 (finding individual who "conduct[ed] most of his Wisconsin business from his home in Naples" to be domiciled in Florida).  The fact that Mr. Smith worked in New York for "many years" does not say anything about his underline current domicile.  Even President Trump himself, a native New Yorker, has declared a change of his domicile.  *See* Maggie Haberman, *Trump, Lifelong New Yorker, Declares Himself a Resident of Florida*, N.Y. Times (Oct. 31, 2019), https://nyti.ms/2A1AfuJ.

Finally, the Committee makes much of the fact that Mr. Smith provided a New York City mailing address (that of Alden Global Capital, 885 Third Avenue) to the town of Southampton for its property tax rolls and in making certain political contributions.  Remand Br. at 9-10.  That is far from proof that Mr. Smith considers New York his permanent home.  As Mr. Smith explains, he uses the Alden address and another corporate address in New Jersey for certain administrative purposes, including "the payment of bills and the handling of correspondence related to tax, accounting, and other matters by individuals who work for those companies."  R. Smith Decl. ¶¶ 17, 20 & Ex. J.  Those individuals forward him and his wife correspondence electronically, as necessary.  *Id.* ¶ 20.

The question is not a close one.  The relevant objective indicators of intent show beyond any doubt that the "center of gravity" of Mr. Smith's life is Florida, not New York.  *See, e.g.*, *24 Hour Fitness USA, Inc.*, 2008 U.S. Dist. LEXIS 84374, at *12-13, 20 (concluding that defendant properly claimed domicile in California given that he had long resided there, owned a home in the state which he lived with his family, was registered to vote there, had a California driver's license, and had "his utilities and personal services, such as phone service and mail delivery" there).

### B.  R. Joseph Fuchs is Domiciled in Florida

The same conclusion holds for Mr. Fuchs.  As explained in his declaration, he and his wife Sheila have lived in an apartment in Palm Beach since 2010.  Decl. of R. Joseph Fuchs ("Fuchs Decl.") ¶ 3.  Their move to Florida was driven primarily by concern about Sheila's health.  She was diagnosed "with chronic lymphocytic leukemia (CLL)," and they believed that her vulnerability to infections—which were and remain the primary risk to her health—"would

12

be significantly lower in the far more salutary Florida climate during the fall, winter and spring seasons." *Id.*

Since moving, Mr. Fuchs and his wife have tended to spend more than seven months of the year in Florida, splitting the rest of the time between their summer residence in Southampton (where they spend the months of July, August and September) and business trips and vacations (which total roughly 50 days per year). *Id. ¶ 4*; *see Galva Foundry*, 924 F.2d at 730; *RGT Holdings, Inc.*, 2017 U.S. Dist. LEXIS 35226, at *5. Like Mr. Smith, Mr. Fuchs has long claimed the homestead exemption for his Palm Beach home. *See* Fuchs Decl. ¶ 5 & Ex. A; *Garcia*, 101 So. 3d at 347; *Craig*, 543 F.3d at 876. Mr. Fuchs receives substantially all his personal mail at his Palm Beach home, has long listed the address of his Palm Beach home on bank accounts, investment accounts, and credit cards, and has had landline service at his Palm Beach home since purchasing it in 2003. Fuchs Decl. ¶¶ 6-8 & Exs. B-D; *also* 15 Moore's Federal Practice § 102.36[1] (listing "location of brokerage and bank accounts," "acquisition . . . of telephones," and "receipt of mail" as factors in domicile analysis). Mr. Fuchs and his wife both have Florida driver's licenses that bear the address of their Palm Beach home, and two of the three vehicles he owns are registered in Florida (the other being registered in New York and used when Mr. Fuchs visits his residence in Southampton). Fuchs Decl. ¶¶ 12-15 & Exs. G-I; *see, e.g.*, *RGT Holdings, Inc.*, 2017 U.S. Dist. LEXIS 35226, at *14. He has cast his vote in several elections in Florida since registering to vote there in January 2006. Fuchs Decl. ¶ 11 & Ex. E.

Mr. Fuchs's tax and business affairs also demonstrate that Florida is his genuine place of domicile. In his federal tax filings since 2013, he has listed his Palm Beach home as his address.

13

Fuchs Decl. ¶ 16 & Exs. J-L; *Lundquist*, 946 F.2d at 12 (noting that defendant "listed a Florida residence on his federal tax returns for relevant years"). He has filed non-resident returns in other states where he has earned income, including New York, Maine and Wisconsin. Fuchs Decl. ¶ 17 & Exs. M-O. In fact, in 2019, the state of New York acknowledged that Mr. Fuchs and his wife are residents of Florida, not New York, after completing a residency audit of several years of their state income tax returns. Fuchs Decl. ¶ 18 & Ex. P. As to his business activities, Mr. Fuchs's declaration and supporting documents make clear that he operates all of his companies, including WJFW, largely remotely from his Palm Beach home. Fuchs Decl. ¶¶ 19-21 & Exs. Q-S. For many years, he has primarily banked at the Palm Beach branches of two banks—first Citibank, and then Chase Bank. Fuchs Decl. ¶ 33.

Mr. Fuchs' declaration and documents also speak to the long-held, important personal ties that he has established in Florida. For about the past six years, he has served as the President of the Board of Directors of the Palm Beach Towers Condominium Association, a voluntary position that entails management of a $7 million budget and a significant time commitment. Fuchs Decl. ¶ 23. He is a longtime member of several clubs in Palm Beach. *Id.* ¶¶ 24-25 & Ex. W. He and his wife are also both longstanding members of a church in West Palm Beach, and his wife is heavily involved in a number of other community organizations. *Id.* ¶¶ 26-27; *Lundquist*, 946 F.2d at 12 (fact that plaintiff "belong[ed] to social organizations in Florida" was "important factor[] . . . suggest[ing] domicile in Florida). And he has come to rely on the services of a number of medical and dental professionals—specifically, a doctor, cardiologist, dentist, periodontist, and orthopedic doctor—who are based in Florida. Fuchs Decl. ¶¶ 28-32; *Perry*, 146 F.R.D. at 167.

14

The sole fact that the Committee marshals to suggest that Mr. Fuchs is domiciled in New York is that he owns property in Southampton.  Remand Br. at 11.  As noted, Mr. Fuchs uses this as a summer residence.  Fuchs Decl. ¶ 22.e.  His ownership of that property and two others in New York—one that he purchased purely as an investment, and another that he uses as a part-time residence, *id.* ¶ 22.d, f—are not evidence that he considers the state his place of permanent residence.

As with Mr. Smith, the evidence here is overwhelming: Mr. Fuchs is domiciled in Florida, not New York.

C.  Mary Smith is Domiciled in California

For her part, Ms. Smith's declaration and documents make crystal clear that her life has been centered in California since she moved there in 2012.  Decl. of M. Smith ("M. Smith Decl.") ¶ 3.  As she explains, she made the move from Massachusetts to be closer to her daughters after her husband passed away in 2012.  *Id.*  Ms. Smith's primary and only residence is a house in Santa Barbara; she does not own any other residential properties, and aside from vacations and other one-off trips, she spends all year at her Santa Barbara home.  *Id.* ¶ 4.  Ms. Smith's Santa Barbara home is where she receives her personal mail, and it has been listed as her address on her credit card and bank account statements since she moved.  *Id.* ¶¶ 6-7 & Exs. A-B. In 2018, Ms. Smith's ties to California deepened further when she married Joel Unger—a California domiciliary who lives with her and spends all year in California.  *Id.* ¶ 9.

Other objective indicators of intent point squarely to California as the place of Ms. Smith's domicile.  Since 2013, Ms. Smith has been registered to vote in California, has had a California driver's license (which bears the address of her Santa Barbara home), and has

15

registered her vehicle in California.  *Id.* ¶¶ 11-12, 14 & Exs. C, E.  During the same period, she

has filed state tax returns only in California.  *Id.* ¶ 15 & Ex. F.  Her personal attorney and

physician are both based in Santa Barbara, and since 2013 she has banked primarily at the Bank

of America branch in Santa Barbara.  *Id.* ¶¶ 18-20.

<u>**CONCLUSION**</u>

The extensive evidence on this issue leaves no room for doubt that all entities and

individuals in WJFW's ownership chain are diverse from the Trump Campaign Committee, a

citizen of New York and Virginia:

- Defendant Northland Television, LLC d/b/a WJFW-NBC has the citizenship of its sole member, Rockfleet Broadcasting, L.P.

- Rockfleet Broadcasting, L.P., has the citizenship of its three partners: Rockfleet Broadcasting, Inc., R. Joseph Fuchs, and SDR.

- Rockfleet Broadcasting, Inc., is a citizen of Delaware and Florida.

- R. Joseph Fuchs is a citizen of Florida.

- SDR has the citizenship of its two members, Randall D. Smith, and Mary Smith, who are citizens of Florida and California, respectively.

For the foregoing reasons, WJFW respectfully requests that the Court deny the Trump

Campaign Committee's motion to remand and resolve WJFW's pending motion to dismiss.

Dated:  May 28, 2020

BALLARD SPAHR LLP

Charles D. Tobin
(admitted *pro hac vice*)
Al-Amyn Sumar
(admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Phone: (202) 661-2218
Fax:     (202) 661-2299
tobinc@ballardspahr.com
sumara@ballardspahr.com

Ashley I. Kissinger
(admitted *pro hac vice*)
1225 17th Street, Suite 2300
Denver, CO  80202
Phone: (303) 376-2407
Fax:     (303) 296-3956
kissingera@ballardspahr.com

Respectfully submitted,

GODFREY & KAHN S.C.

*s/ Brady C. Williamson*
Brady C. Williamson
Mike B. Wittenwyler
bwilliam@gklaw.com
mwittenwyler@gklaw.com
One East Main Street, Suite 500
Madison, WI 53703-3300
Phone: (608) 257-3911
Fax:     (608) 257-0609

*Counsel for Defendant Northland Television, LLC
d/b/a WJFW-NBC*

17